F I L E D
United States Court of Appeals
Tenth Circuit

AUG 19 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOHN E. WORTHEN,

      Defendant - Appellant.

No. 98-4043

(D.C. No. 97-CR-05-J)

(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **HENRY**, Circuit Judges.

Defendant-Appellant John E. Worthen appeals the district court's denial of his motion to withdraw his guilty plea as well as various aspects of his sentence.

On April 28, 1997, Defendant was indicted on the following counts: (I) attempting to evade or defeat payment of income tax in violation of 26 U.S.C. § 7201 for the 1990 tax year; (II) making and subscribing a false tax return, statement, or other document in violation of 26 U.S.C. § 7206(1); (III) failure to file a tax return, pay tax, or supply information in violation of 26 U.S.C. § 7203; and (IV) failure to file a tax return, pay tax, or supply information on behalf of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Nordic Limited, Inc., in violation of 26 U.S.C. § 7203. Defendant entered a plea of guilty to Count I, attempted tax evasion, on September 22, 1997. See Appellant's App. at 145. As part of the plea agreement, the Government agreed to urge dismissal of the remaining counts, see Addendum to Appellant's App. at 380, and it agreed not to recommend a sentence adjustment based on the use of sophisticated means to avoid detection of the offense. See Appellant's App. at 10.

On December 31, 1997, Defendant filed a motion to withdraw his guilty plea. The court heard argument on the motion on January 5, 1998; held a hearing on the motion on January 15, 1998; held an evidentiary hearing on the motion February 2, 1998; and heard additional argument on February 3, 1998. In an Order dated February 19, 1998, the district court denied Defendant's motion to withdraw his guilty plea. See Appellant's Br., Attach. at 2. On March 17, 1998, the court sentenced Defendant to a term of 33 months' imprisonment followed by 3 years' supervised release.

The facts underlying the indictment indicate that Defendant was the president of Nordic Limited, Inc., which he operated out of his home in Salt Lake City, Utah. In 1990, acting on behalf of Nordic, Defendant sold mining leases owned by Nordic to Crown Resources of Colorado for $494,520. As payment for the mining leases, Crown Resources issued a cashier's check payable to Nordic.

Upon presenting the check for payment, Defendant obtained five separate checks totaling $494,520 payable to five separate corporate entities over which he exercised substantial control. Defendant subsequently deposited these checks into bank accounts maintained by the corporations.

During 1990, in connection with his probation for a separate conviction, Defendant reported $57,440.19 in annual income to his probation officer. He did not, however, report the $494,520 from the sale of the Nordic mining leases to Crown Resources. In addition, the record shows that Defendant received income during the last three months of 1990 when he used corporate accounts to make personal expenditures totaling at least $88,405.21. The record does not indicate whether Defendant reported that income to the probation office.

On April 15, 1991, Defendant filed an Application for Automatic Extension to File U.S. Individual Income Tax Return in which he reported his tax liability for 1990 as $2,235 and to which he attached a check in that amount. Defendant did not subsequently file an income tax return for 1990.

For purposes of the plea agreement, Defendant and the Government stipulated to the amount of Defendant's tax liability for 1990. The parties stipulated that Defendant's taxable income included the $57,440.19 he reported to his probation officer and the $88,405.21 he received as expenditures from corporate accounts. See Appellant's App. at 14-19. Less the $2,235 payment he

sent with his extension application, Defendant's stipulated amount of tax liability for 1990 was therefore $38,601.74. See Addendum to Appellant's App. at 387.

## I.

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. See United States v. Killingsworth, 117 F.3d 1159, 1161 (10th Cir. 1997). Rule 32(e) of the Federal Rules of Criminal Procedure provides that "[i]f a motion to withdraw a plea of guilty . . . is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." In determining whether a defendant has established a "fair and just reason," we consider seven factors: (1) whether the defendant has asserted his innocence; (2) prejudice to the government; (3) the defendant's delay in filing his motion; (4) inconvenience to the court; (5) the defendant's assistance of counsel; (6) whether the plea is knowing and voluntary; and (7) waste of judicial resources. See United States v. Carr, 80 F.3d 413, 420 (10th Cir. 1996). "Although a defendant's motion to withdraw a plea before sentencing should be 'freely allowed' and 'given a great deal of latitude,' we will not reverse absent a showing that the trial court acted 'unjustly or unfairly.'" United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999).

The district court decided that the first, third, and sixth factors weighed

against allowing Defendant to withdraw his plea. The court first concluded that Defendant did not assert his innocence before the court, and in fact he "admitted that he had over $100,000 in income which was not reported to the United States and upon which he had not paid taxes." Appellant's Br., Attach. at 3. The court noted that Defendant signed and submitted to the court a statement certifying that the facts indicating that he had underreported his income were true and correct. See id. at 2. Weighing the third factor, the court found that Defendant delayed filing his motion to withdraw his plea until three months after he had entered the plea, which was just five days before sentencing and twelve days after reviewing his draft presentence report. According to the court, this timing indicated that "[D]efendant's reason for filing the motion was motivated by the contents of the presentence report, which is not a fair and just reason for the withdrawal of plea." Id. at 6. Finally, in considering the sixth factor, the court noted that Defendant had knowingly and voluntarily admitted his guilt, both orally and in writing, and that he had been "represented by counsel throughout the proceedings." Id. For these reasons, the court denied Defendant's motion.

On appeal, Defendant contends that the court abused its discretion in denying his motion to withdraw his plea because the Carr factors weighed in favor of granting the motion. Specifically, Defendant claims that he asserted his innocence and presented the testimony of two expert witnesses and an affidavit by

a former IRS employee to support his assertion; that he had legitimate reasons for failing to file his motion to withdraw his plea in a more timely manner; and that his plea was not "knowingly and intentionally given," Appellant's Br. at 32, because even if he signed the statement certifying the truth of the facts showing that he committed the charged offense, he did not "ever admit a critical element of the offense; that is[,] that he owed any federal income tax . . . for 1990." Id. at 33.

We begin our analysis with the three factors relied on by the district court. With respect to the first factor, Defendant's alleged assertion of innocence, there is some evidence that Defendant may not have believed he owed any income tax for 1990. For example, at the initial plea hearing, Defendant testified that the actions underlying the charge of attempted tax evasion against him "arose out of [his] belief that a repayment of a loan from a corporation was not a taxable event." Appellant's App. at 121. More specifically, Defendant believed that the money he received from selling the mining leases for Nordic to Crown Resources constituted a repayment of the "vast sums of money" he had loaned to Nordic over a period of approximately twelve years. Id. at 122. Although this evidence suggests that Defendant asserted his innocence, the record also contains evidence contradicting his assertion. For example, at sentencing, Defendant's counsel stated that Defendant "concede[d] then and he concedes now that he had not filed

his returns," even though he generally "knew he had income during that period." Id. at 341. At the same hearing, Defendant admitted that he "knew what [he] was doing for all the years [he] failed to file and pay [his] taxes and [he] knew it was wrong." Id. at 356-57. These admissions and others like it seriously contradict Defendant's assertion of innocence. Nevertheless, even if the evidence showing that Defendant asserted his innocence weighs in favor of granting the motion to withdraw the plea, see Carr, 80 F.3d at 420 (indicating that all this factor requires is an assertion of innocence), the remaining factors weigh against granting the motion.

Defendant's delay in filing his motion to withdraw the plea—the third factor—weighs against allowing Defendant to withdraw. Defendant filed his motion approximately three months after entering his plea, which was only five days before sentencing. Delays of three months or more "weigh against granting a withdrawal motion because they often result in substantial prejudice to the government and may suggest manipulation by the defendant." Id. Further, "'[i]f the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerab[le] . . . force.'" Id. (quoting United States v. Vidakovich, 911 F.2d 435, 439 (10th Cir. 1990)). Defendant's excuses do not have considerable force. He claims that his expert witnesses were unprepared to testify

that he had no tax liability prior to the time he filed the motion and that he did not have enough money to pay the experts. Considering that Defendant was indicted in April 1997, that he did not enter his plea until September 1997, and that he did not file his motion to withdraw his plea until the end of December of that year, however, we think that he had ample time in which to obtain the advice of experts and arrange for their payment. In addition, as the district court noted, the attempt to change the plea came shortly after Defendant reviewed his proposed presentence report, which suggests that the timing may have been linked to the contents of the report rather than to any difficulties he experienced in obtaining the testimony of his experts. This timing, which implies that Defendant was dissatisfied with the sentence he received, reflects an improper motivation for attempting to withdraw the plea. See United States v. Gordon, 4 F.3d 1567, 1573 (10th Cir. 1993) (stating that a defendant's "dissatisfaction with the length of his sentence is an insufficient reason to withdraw a plea").

Because the record reveals no evidence indicating that Defendant entered the plea involuntarily or unknowingly, the sixth factor also does not support Defendant's argument. In describing why he was prepared to enter a plea at the initial plea hearing, Defendant testified that he was "well aware that the grief that this thing has caused [him] already for the last three years, coupled with the possibility of losing at trial is just overwhelming for [himself] and [his] family."

Appellant's App. at 118. Defendant also repeatedly told the court that he understood the plea and that he realized he could proceed to trial if he did not wish to enter a guilty plea. See, e.g., id. at 118, 134. Additionally, Defendant indicated that he understood that the facts included in the statement he signed would be included in the presentence report and that they were true and correct. See id. at 11. In light of this evidence, we can only conclude that Defendant entered his plea knowingly and voluntarily.

Finally, although the district court limited its discussion to the first, third, and sixth factors from Carr, we conclude that the second, fourth, fifth, and seventh factors weigh against granting the motion. With respect to the second factor, prejudice to the government, we note that, if the district court had granted Defendant's motion, not only would the government be required to recommence trial preparation and reissue subpoenas but also it would need to locate evidence and witnesses which may have been lost with the passage of time. The fifth factor also does not support Defendant's position because he was represented by competent counsel throughout the proceedings. See infra note 4. In addition, the fourth and seventh factors, which involve inconvenience to the court and waste of judicial resources, weigh against allowing Defendant to withdraw his plea. Although "some waste of judicial resources from a plea withdrawal is inevitable," Carr, 80 F.3d at 421, the court likely would be inconvenienced by a trial at this

stage.

Because six of the seven factors weigh against allowing Defendant to withdraw his plea, we conclude that the district court did not abuse its discretion in denying the motion to withdraw the plea.

## II.

Defendant also takes issue with several aspects of his sentence, including the calculation of the base offense level; the two-point increase to the base offense level for the use of sophisticated means to evade discovery of the offense; the calculation of the criminal history category; and the failure of the district court to reduce his base offense level for acceptance of responsibility. We review the district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. See United States v. Pretty, 98 F.3d 1213, 1222 (10th Cir. 1996).[1] "We give due deference to the district court's application of

_____

[1]Although the district court did not indicate which version of the United States Sentencing Guidelines it applied, because the presentence report applied the 1990 version of the Guidelines, see Addendum to Appellant's App. at 388, we assume that the court also applied that version. The district court was correct in doing so. Although the general rule is that a sentencing court applies the version of the Guidelines in effect at the time of sentencing, if the later version imposes harsher punishment and thereby implicates the Ex Post Facto Clause, the court applies the Guidelines in effect at the time of the defendant's offense. See United States v. Nichols, 169 F.3d 1255, 1270 n.3 (10th Cir. 1999); United States v. Svacina, 137 F.3d 1179, 1186 (10th Cir. 1998). Under the Guidelines in effect at the time of sentencing, March 17, 1998, Defendant's base offense level would

the Guidelines to the facts." United States v. Hankins, 127 F.3d 932, 934 (10th Cir. 1997); see 18 U.S.C. § 3742(e).

Defendant first argues that the district court incorrectly found that he was liable for between $20,000 and $40,000 in 1990 income taxes, and that, as a result, the court erroneously calculated his base offense level at 10, rather than 6. The court's conclusion regarding the amount of the tax loss is a factual finding which we review only for clear error. See Pretty, 98 F.3d at 1222. In connection with the plea agreement, the Government and Defendant stipulated that Defendant's taxable income was $145,845.50. See Appellant's App. at 14-19. This amount was based on Defendant's report of $57,440.19 in income from Fuji Financial, one of the corporations over which Defendant exercised substantial control, and the $88,405.21 allegedly paid out of corporate accounts to cover Defendant's personal expenditures. See id. Moreover, by signing the statement in advance of the plea which he submitted to the district court, Defendant admitted to earning income in this amount. See id. at 15, 19. Based on the stipulated amount of income, the district court correctly concluded that Defendant was responsible for a tax loss of $38,601.74. See Addendum to Appellant's App. at 387. Because the district court simply applied the amount to which the parties

_____

have been 12, rather than 10, for a tax loss of $38,601.74. Compare U.S.S.G. § 2T1.1 & 2T4.1 (1997) with U.S.S.G. § 2T1.1 & 2T4.1 (1990). Accordingly, for purposes of this appeal, we refer only to the 1990 Guidelines.

stipulated, we do not think that the court committed clear error in determining

that Defendant was responsible for a tax loss of between $20,000 and $40,000.[2]

Although we review the factual findings underlying the court's calculation

of the base offense level for clear error, see United States v. Taylor, 97 F.3d

1360, 1362 (10th Cir. 1996), as mentioned above, our review of the district

court's interpretation of the Guidelines is de novo. See Pretty, 98 F.3d at 1222.

Section 2T1.1 of the 1990 Guidelines sets the base offense level for a violation of

26 U.S.C. § 7201 at the "[l]evel from § 2T4.1 (Tax Table) corresponding to the

tax loss." U.S.S.G. § 2T1.1(a). Reference to § 2T4.1 demonstrates that the base

offense level for a tax loss of more than $20,000 but less than $40,000 is 10. See

id. § 2T4.1(E). We conclude that the district court correctly determined

Defendant's base offense level as 10.

Defendant also argues that the district court improperly increased his base

offense level by two points for the use of sophisticated means in concealing the

offense. See id. § 2T1.1(b)(2). First, he claims that, in connection with the plea

_____

[2]We note that the Government could have sought to hold Defendant
responsible for a much larger amount. Presumably as part of the plea agreement,
the Government did not seek to include as taxable income the $494,520 Defendant
received for the sale of the mining leases to Crown Resources. See Appellant's
App. at 348-49. Although Defendant disputed whether there was an overlap
between this sum and the $88,405.21 in personal expenditures, and although he
claims on appeal that he did not owe taxes on this amount at all, we believe that
Defendant received a lower sentence than he might have otherwise.

agreement, the Government agreed not to recommend an increase for sophisticated concealment. Second, Defendant urges that any sophisticated means he employed were not for the purpose of "imped[ing] discovery of the nature or extent of the offense." Id. § 2T1.1(b)(2). In response to Defendant's first argument, we note that, although the Government agreed not to advocate an increase for use of sophisticated means, it reserved the right to defend such an increase "should the probation office determine it to be applicable." See Appellant's App. at 10. In fact, the probation office did recommend an increase on this basis. See Addendum to Appellant's App. at 389. Thus, the Government's reference to sophisticated means at sentencing, see Appellant's App. at 352, did not violate the plea agreement.

Defendant's second argument is also unpersuasive. The 1990 Guidelines describe "sophisticated means" as "conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case." U.S.S.G. § 2T1.1, comment. (n.6). We think Defendant's conduct meets this description. As Defendant admitted at sentencing, some of his efforts involving his alleged income may have been intended to avoid creditors. See Appellant's App. at 344. The record further indicates that Defendant was less than fully candid with his probation officer in reporting his income. See Addendum to Appellant's App. at 389. Although Defendant seems to contend that this failure was due more to his

lack of organization and inconsistent record-keeping than to an effort to impede investigatory efforts, we do not think the district court erred in finding otherwise. Moreover, the record indicates that Defendant routinely placed his income in a variety of corporate accounts and that he used corporate accounts to pay his personal expenses. See id.; see also Appellant's App. at 23. We do not think that the district court erred in concluding that Defendant's conduct amounted to the use of sophisticated means under § 2T1.1(2)(b).

Defendant also argues that his criminal history category should have been IV rather than V as determined by the district court. Section 4A1.1(e) provides: "Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) . . . . If 2 points are added for item (d), add only 1 point for this item." U.S.S.G. § 4A1.1(e). Because Defendant received two points for committing the instant offense while on parole pursuant to § 4A1.1(d), the district court added only one point pursuant to § 4A1.1(e). Defendant argues that this point should not have been added because he did not commit any part of the instant offense within two years of imprisonment. Specifically, he claims that the conduct related to the instant offense did not begin until August 15, 1991, the date on which he was required to file his 1990 tax return, which was more than two years after his release from imprisonment on June 30, 1989.

We agree with the district court that Defendant began committing conduct relating to the instant offense at least as early as September 1990. The record supports this conclusion. First, Defendant began making personal expenditures out of corporate accounts as early as September 1990. See Addendum to Appellant's App. at 384. Second, Defendant sold the Nordic mining leases in September of 1990, at which time he placed the money into various corporate entities. Third, Defendant failed to report the income he earned from the sale of the mining leases to his probation officer. Because this conduct began within two years of June 30, 1989, the last date on which Defendant was imprisoned, the court correctly added one criminal history point to Defendant's score, and it correctly calculated the criminal history category at V. See U.S.S.G. Ch. 5, Pt. A.

Finally, Defendant argues that the district court erred by failing to apply a two-point deduction to his base offense level for acceptance of responsibility. Determination of acceptance of responsibility is a question of fact which we review for clear error. See United States v. Mitchell, 113 F.3d 1528, 1533 (10th Cir. 1997). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility . . . , the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5). According to § 3E1.1 of the Guidelines, a two-point reduction in the base offense level is warranted when "the defendant clearly demonstrates a recognition

and affirmative acceptance of personal responsibility for his criminal conduct." Id. § 3E1.1(a). In spite of Defendant's admission that he failed to report most of the income he earned during 1990 and his admission that he knew his actions were wrong, see Appellant's App. at 356-57, he has denied owing any taxes on this income. This denial is inconsistent with accepting responsibility for the offense to which he pled guilty, i.e., attempted tax evasion. Moreover, we do not think that Defendant's admissions of wrongdoing necessarily constitute an acceptance of responsibility. See United States v. McMahon, 91 F.3d 1394, 1397 (10th Cir. 1996) ("A defendant is not entitled to an adjustment for acceptance of responsibility merely because he admits to wrongdoing."). When we consider Defendant's continued insistence that he does not owe taxes for 1990, his incomplete record-keeping with respect to his businesses, see Appellant's App. at 343, the complicated relationships between his corporations, his use of corporate funds for personal expenditures, and his failure to file income tax returns for many years prior to 1990, see id. at 343, 350, it seems apparent that Defendant has not "clearly demonstrate[d] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). We conclude that the district court did not commit clear error in finding that a downward adjustment on the basis of acceptance of responsibility was unwarranted.

We AFFIRM the dismissal of Defendant's motion to withdraw his guilty plea and his sentence.[3]

Entered for the Court

---

[3]Defendant submitted two additional motions in conjunction with this appeal. In the first motion, he moved pro se to file a supplemental brief in which he asserted that the district court violated Rules 11(c) and 11(f) of the Federal Rules of Criminal Procedure by failing to ensure that he understood the nature of the charge against him and by failing to establish an adequate factual basis for the plea, respectively. Defendant also claimed that he received ineffective assistance of counsel on appeal because his counsel failed to raise the Rule 11 arguments in the opening brief. We have reviewed the record, and we conclude that Defendant's Rule 11 arguments are without merit. Additionally, while we note that claims of ineffective assistance of counsel should normally be raised in collateral proceedings, see United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc), in this case we may review the claim because Defendant complains only about the assistance he received on appeal. See United States v. Boigegrain, 155 F.3d 1181, 1186 (10th Cir. 1998) (noting that this court may hear ineffective assistance claims in rare instances when they are fully developed on the record). In light of our conclusion that Defendant has failed to state a claim based on Rule 11, we hold that Defendant has failed to demonstrate that he received ineffective assistance of counsel on appeal. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (articulating showing required for establishing claim of ineffective assistance of counsel). The motion to file a supplemental brief is denied.

In his second additional motion, Defendant moved to supplement the record with an IRS document that was not before the district court. Because the document does not definitively establish Defendant's tax liability for 1990 or the IRS's position with respect to his liability, and because it does not affect our holdings that Defendant's sentence and the district court's denial of Defendant's motion to withdraw his plea rested on sufficient factual bases, we deny the motion to supplement the record.

Monroe G. McKay
Circuit Judge