**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CAROL D. FRIESEN,

Defendant - Appellant.

No. 98-6308

(W.D. Oklahoma)

(D.C. No. CR-98-1-L)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **BRORBY** , and **BRISCOE** , Circuit Judges.

Carol Friesen appeals the district court's denial of her motion to withdraw her guilty plea to nineteen counts of mail fraud and thirteen counts of Medicaid fraud. She further contends that her guilty plea must be vacated because it was the result of ineffective assistance of counsel. Finally, she alleges for the first time on appeal that her guilty plea was taken in violation of Fed. R. Crim. P. 11(c)(1), as the trial judge did not personally advise her of the elements and the

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

maximum possible penalty for each count of her indictment. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

By indictment dated January 6, 1998, Carol Friesen was charged with nineteen counts of mail fraud in violation of 18 U.S.C. §§ 2, 1341, thirteen counts of Medicaid fraud in violation of 42 U.S.C. §§ 2, 1320a-7b(a)(1)(i), and four counts of money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i). The indictment alleged that Ms. Friesen knowingly presented claims to and received payment from the Oklahoma Medicaid program for services she knew were not reimbursable by Medicaid. At her January 22 arraignment, Friesen entered a plea of "not guilty" to all counts of the indictment.

On May 7, 1998, Friesen changed her plea and, pursuant to a Plea Agreement with the government, entered a plea of guilty to the mail fraud counts (Counts 1-19) and Medicaid fraud counts (Counts 20-32). In exchange for Friesen's guilty plea to Counts 1-32, the government agreed to move for dismissal of the four money laundering counts at the time of sentencing and stipulated that the amount of monetary loss caused by Friesen's conduct was between $120,000

and $200,000. [1]   To facilitate the plea, Friesen signed two documents, a Plea Agreement and a Petition to Enter Plea of Guilty.

Neither party has furnished us with a complete transcript of the May 7, 1998, plea hearing, conducted pursuant to Fed. R. Crim. P. 11.  Accordingly, we have supplemented the record with a certified copy of the transcript, covering 18 pages, which we have studied carefully.  Due to its length, we do not reproduce the transcript in its entirety, but refer to portions which are particularly relevant and illustrative.

The district court began by addressing Friesen as follows:

> **THE COURT** :   . . . I would ask you that if during this hearing today, if there is anything that you do not understand, any questions that I may ask that you do not understand, or anything about these proceedings that you do not understand, don't let me just continue with the proceedings.  I want you to let me know that and stop me and tell me you don't understand my question or I will give you an opportunity to visit with your counsel, Mr. Henry; so will you do that?
>
> **DEFENDANT FRIESEN**  :  Yes, sir.

Plea Hearing Tr. at 3-4.  The court then instructed the Assistant United States Attorney (AUSA) to recite the nature of the crimes with which Friesen was charged.  The AUSA described the nineteen mail fraud counts and the thirteen

---

[1]Because monetary loss in excess of $200,000 could have resulted in a greater sentence under the Sentencing Guidelines, this stipulation benefitted Friesen.

Medicaid fraud counts, citing the maximum punishments for each. Following this recital, the court undertook a detailed description of the rights guaranteed criminal defendants. The following exchange then took place: **THE COURT** : . . . Now, do you understand if you plead guilty, you will be found guilty without a trial and will have given up or waived all of those rights; do you understand that?

**DEFENDANT FRIESEN** : Yes, sir.

**THE COURT** : Mr. Henry, do you feel that Ms. Friesen fully understands the nature of the charges that are against her, the possible punishment that the law provides for, and all of the rights that she is entitled to?

**MR. HENRY** : Yes, sir.

**THE COURT** : Ms. Friesen, is there any question that you have regarding your rights? Is there any question that you have regarding the nature of the charges against you or the possible punishment that the law provides for?

**DEFENDANT FRIESEN** : No, sir.

**THE COURT** : You fully understand all of those matters?

**DEFENDANT FRIESEN** : Yes.

**THE COURT** : Well, knowing the nature of the charges against you, the possible punishment that the law provides for, and the rights that you are entitled to, how do you plead to the counts that are in the indictment?

**MR. HENRY** : Judge, that would be Counts 1 through, I believe, 32.

**THE COURT** : Counts 1 through 32?

**MR. HENRY** : Yes, sir.

**THE COURT** : Ms. Friesen, how do you plead to Counts 1 through 32?

**DEFENDANT FRIESEN** : Guilty.

Appellant App. at A-292 to 293.

After Friesen entered her plea, the court continued:

> **THE COURT** : Before the Court can accept your plea of guilty, there are some additional questions I need to ask you.
>
> First of all, I have in front of me your petition to enter plea of guilty which you have signed and your attorney has signed. And I would ask you if you have had an opportunity to go over with Mr. Henry that petition to enter plea of guilty?
>
> **DEFENDANT FRIESEN** : Yes, sir.
>
> **THE COURT** : And do you fully understand all of the questions that were contained in that petition and your answers to those questions?
>
> **DEFENDANT FRIESEN** : Yes, sir.

Appellant App. at A-293. To ensure that Friesen understood the effect of her guilty plea, the court then discussed the sentencing procedure. After explaining that the court alone would determine her sentence and describing the types of factors the court would consider in fashioning it, the court inquired:

> **THE COURT** : Ms. Friesen, is your plea of guilty and are the waivers of your rights made voluntarily and freely of your own free choice?
>
> **DEFENDANT FRIESEN** : Yes, sir.
>
> **THE COURT** : Have there been any threats of force or pressures from anyone else to get you to enter this plea of guilty?
>
> **DEFENDANT FRIESEN** : No.

Appellee Sup. App. at 21.

The court then asked the AUSA to state the terms of the plea agreement. The AUSA explained that in exchange for Friesen's guilty plea to Counts 1-32 of the indictment, it would (1) bring no other charges against her concerning her billings of Medicaid and (2) dismiss the money laundering charges at sentencing. When asked by the court if that was her understanding of the full and complete plea agreement, Friesen stated that it was.

At the court's request, the AUSA then asked Friesen a series of questions designed to establish a factual basis for her guilty plea. In her answers, Friesen admitted to each of the sixteen different factual allegations inquired of by the government. Sufficiently convinced that Friesen's guilty plea was based in fact, the court concluded with a final series of questions:

> **THE COURT** : Ms. Friesen, are you pleading guilty to Counts 1 through 32 of the indictment for any reason other than the fact that you are guilty of the crimes charged in those counts?
>
> **DEFENDANT FRIESEN** : No, sir.
>
> **THE COURT** : Are you satisfied with the services of your attorney, Mr. Henry, in this matter?
>
> **DEFENDANT FRIESEN** : Yes, sir.
>
> **THE COURT** : Do you feel that he has done all that anyone could do to counsel and assist you regarding this matter?
>
> **DEFENDANT FRIESEN** : Yes, I do.

**THE COURT** : Is there any other information you need from the Court or advice from your attorney before the Court would accept your plea of guilty?

**DEFENDANT FRIESEN** : No, sir.

**THE COURT** : Have you understood all of the questions that I have asked today?

**DEFENDANT FRIESEN** : Yes, I have.

**THE COURT** : Well, Carol Friesen, based on your clear and unambiguous answers to my questions and the questions of Counsel, I find you are competent to enter this plea, that it is entered voluntarily and with the full understanding of the rights being given up. I accept your waiver of jury trial. And I accept your plea, and conditional upon your review of the pre-sentence investigation report and subject to that review, find you guilty as charged in Counts 1 through 32 inclusive of the indictment.

Appellee Sup. App. at 24-25.

Several days after the May 7 plea hearing, Friesen obtained new counsel, Stephen Jones. In a letter dated May 13, 1998, Jones informed the probation officer assigned to Friesen's case that he now represented Ms. Friesen, and requested a postponement of Friesen's pre-sentence investigation. Jones stated that he was consulting with Friesen to determine whether she might seek to withdraw her guilty plea. Jones also contacted the government and the district court judge, advising them of the same information. On June 12, 1998, Friesen filed a motion to withdraw her May 7 guilty plea.

After both Friesen and the government had submitted briefs on the issue, on July 14 the district court conducted an evidentiary hearing on the motion. Through affidavits and testimony at the evidentiary hearing, Friesen alleged that she was in a state of confusion at the time of the plea hearing and had repeatedly answered untruthfully in response to the court's questioning. She argued that she had mistakenly thought she was pleading guilty to only a single count of the indictment.

She further alleged that her plea was not voluntary, as her attorney Henry (1) failed to investigate her case; (2) failed to prepare for her case; (3) lied to her about the number of counts to which she was pleading guilty; (4) lied to and threatened her, telling her that she had no choice but to plead guilty; (5) refused to discuss the possibility of going to trial; (6) harassed her by calling her every hour until she agreed to plead guilty; (7) gave her a deadline within which she had to decide if she would plead guilty; (8) lied and threatened her, telling her that she could not stop the plea process once it had begun; (9) refused to answer her questions regarding the plea agreement or plea; (10) refused to allow her to read any of the plea documents; (11) hid the plea documents; (12) coerced her and exhibited anger towards her when she sought to review the documents; (13) coerced her and exhibited anger towards her when she asked questions concerning her plea; (14) instructed her to admit her guilt and lie to the court; (15) threatened

to withdraw and leave her without counsel at trial if she did not enter her plea; and (16) lied to her, threatening that she would spend the rest of her life in jail if she did not plead guilty. Friesen provided affidavits of close friends and family members who supported her version of the events but which were based largely on what Friesen had told them.

In opposition to the motion, the government sought to demonstrate that Friesen's plea had been knowing and voluntary. It argued that Friesen's statements at her plea hearing conclusively refuted her later claim that she had intended to plead guilty to only one count. The government called as a witness Friesen's former attorney, Mr. Henry, who denied ever threatening, coercing, convincing or misleading Friesen. He testified that prior to the plea hearing he had reviewed the plea agreement with Friesen and informed her that the decision of whether to plead guilty was hers alone to make.

After reviewing the evidence, including the transcript of defendant's plea hearing, the district court denied Friesen's motion to withdraw her guilty plea. The court found that Friesen's plea had been knowing and voluntary, expressly rejecting Friesen's contention that she was "tricked" by her attorney into pleading guilty to the 32 counts of the indictment. The court also found that Friesen had received competent assistance of counsel.

**DISCUSSION**

I.    *District Court's Denial of Friesen's Motion to Withdraw Guilty Plea*

Rule 32(e) of the Federal Rules of Criminal Procedure provides in pertinent part: "[i]f a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."  The burden of demonstrating a "fair and just reason" rests with the defendant.    See United States v. Gordon    , 4 F.3d 1567, 1572 (10th Cir. 1993).

In determining whether a defendant has met this burden, we consider the following factors:  (1) whether the defendant has asserted her innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources.    See United States v. Carr   , 80 F.3d 413, 420 (10th Cir. 1996).  When a district court has denied a defendant's Rule 32(e) motion, we review for abuse of discretion,        and will not reverse absent a showing that the district court acted "unjustly or unfairly."   Id. at 419.

In arguing that the district court abused its discretion when it refused to allow her to withdraw her plea, Friesen focuses on the relatively short time lapse

between her guilty plea and her subsequent motion to withdraw it. [2] Friesen asks us to draw two conclusions from this fact. First, she argues that the short delay itself justifies her in withdrawing her plea, as it is the dominant consideration under several of the <u>Carr</u> factors. Second, she contends that her speed in moving to withdraw her plea adds credibility to her allegations that she was confused, distraught, coerced and misled at the time of her plea hearing.

As to the latter claims of confusion, trickery and coercion, the district court made a critical finding. After a hearing, the district court made a specific credibility determination with respect to the differing versions of the relevant events given by Ms. Friesen and Mr. Henry, finding Mr. Henry to be believable. <u>See</u> Appellant App. at A-103. We are bound by that credibility determination.

We note also that, after observing Friesen's demeanor and evaluating her responses at both the plea hearing and the hearing on the motion to withdraw, the district court found Ms. Friesen's plea was knowingly and voluntarily entered and, essentially, that her testimony on July 14, 1998, was not credible where it was inconsistent with her responses on May 7, 1998. While not binding on this court, the fact that the district court's finding of voluntariness was based in large

---

[2]While her motion to withdraw her guilty plea was filed nearly five weeks after the plea entry, Friesen emphasizes that she notified the court and the government that she was considering withdrawing her plea within a week of the plea hearing.

part on the court's personal observations and evaluations of Friesen's testimony—an opportunity not available to us in our review of the transcript alone—supports the associated credibility determination.

The transcript of the plea hearing fully supports these findings and belies Ms. Friesen's claims that she was in a state of confusion, including her assertion that she thought she was pleading guilty to only one count. No fewer than five times in the plea hearing was reference made to her plea of guilty to "Counts 1 through 32." The Plea Agreement document, which Friesen signed and said she reviewed, stated that she would plead guilty to Counts 1 to 19 and 20 to 32. When the court established the factual basis for her plea, Friesen admitted to each of the acts—grouped in a count-by-count basis—alleged by the government. Through the entire colloquy, and in specific answers to the courts's detailed inquiries, Friesen testified that she had not been pressured by anyone to plead guilty and that she was doing so freely and voluntarily. The transcript does not reveal the slightest hesitation, doubt, equivocation or confusion. The portion of the hearing dealing directly with the facts surrounding her charges illustrates Ms. Friesen's unequivocal responses to matters within her specific knowledge, including her voluntary attempts to correct factual inconsistencies:

> **Q. (By Ms. Paull [AUSA])** Ms. Friesen, on or about the dates that are listed in Counts 1 through 19 of the indictment in the Western District of Oklahoma, did the State of Oklahoma mail you the listed

warrants as payment for claims you or your employees submitted to Medicaid?

**A.** Yes, ma'am.

**Q.** Did those checks include payments for billings on behalf of children who received reading instruction from the Friesen Reading Clinic?

**A.** Yes, ma'am.

**Q.** Did the billings request reimbursement from Medicaid for services described as individual psychotherapy performed by a physician?

**A.** Yes, ma'am.

**Q.** Did you know that these children had not received individual psychotherapy from a physician?

**A.** Yes, ma'am.

**Q.** In Counts 20 through 21, did you or your employees submit those claims to the Oklahoma Medicaid program in July and August for services for the child that is described in those two counts?

**A.** Yes, ma'am.

**Q.** Was he a student at the Friesen Reading Clinic receiving reading instruction?

**A.** Excuse me, just a minute. He is a girl.

**MS. PAULL:** Excuse me, Your Honor. In an effort to not to [sic] name minors, I am referring just to the children in the counts rather than by name.

**DEFENDANT FRIESEN:** Yes.

**Q. (BY MS. PAULL)** Was Medicaid billed for these services as individual psychotherapy performed by a physician?

**A.** Yes.

**Q.** Did you know he had not received psychotherapy from a physician?

**A.** Yes.

**Q.** In Counts 22 through 29, there are several children named there. On or about the dates that are listed, did you or your employees submit claims to the Oklahoma Medicaid program for the named children?

**A.** Yes.

**Q.** Is it true that these children were not seen on the dates for which the claims were submitted?

**A.** Yes.

**Q.** Did you know that they had not received individual psychotherapy from a medical physician?

**A.** Yes.

**Q.** In Counts 30 through 32, did you or your employees submit claims for individual psychotherapy performed by a physician for the three dates that are listed in the indictment?

**A.** Yes.

**Q.** Wasn't the service provided actually the completion of divorce papers to be filed in court on behalf of this patient?

**A.** Excuse me just a minute. Yes, it was not psychotherapy.

**Q.** And, in fact, did the divorce papers that were prepared for Ms. Bentley include your notarization of her signatures?

**A.** Yes, ma'am.

**Q.** In fact, did you direct one of your employees to complete those papers?

**A.** Yes, ma'am.

**Q.** Did those billings involve that – include services such as that?

**A.** Yes.

Plea Hearing Tr. at 12-15.

Finally, we note that Ms. Friesen is a highly educated, mature adult, with business skills doubtlessly including the ability to make decisions and evaluate her circumstances. [3] In light of the evidence, we find Friesen's belated claims of mistake and attorney coercion unpersuasive.

We turn next to the Carr factors. Because we reject Friesen's allegations of coercion and confusion, her only remaining argument is based on time. Friesen suggests that Carr factors two, three, four, and seven—which measure prejudice to the government, length of delay, inconvenience to the court and waste of judicial resources, respectively—all contain an element of time. Thus, she argues, because she contacted the government and the court within a week of her plea and

---

[3]Ms. Friesen testified that she holds a degree in special education, a masters degree in reading, and that she is certified as a licensed professional counselor. See Appellant App. at A-115 to 116. She also testified that she has operated the Friesen Reading Clinic for approximately 30 years. See Appellant App. at A-154.

filed her formal motion within five weeks, allowing her to withdraw her plea would have resulted in little prejudice or waste of time or resources.

Friesen's interpretation suggests a nearly-absolute right to withdraw a guilty plea for any defendant who moves quickly to withdraw it.  We decline to adopt such a rule.  The seven    Carr  factors must be considered in their proper context:  ultimately, the defendant bears the burden of demonstrating a "fair and just reason" why she should be allowed to withdraw her guilty plea.  She must do more than simply show that little or no prejudice will result; she must demonstrate some affirmative reason why we should undo what has been done.    [4]

In reviewing the district court's decision to deny Friesen's motion to withdraw her plea, we note that the emphasis given to each of the        Carr  factors will undoubtedly change from case to case, depending on the specific facts.  It is within the discretion of the district court to weigh these factors and to determine what circumstances justify withdrawing the defendant's plea.        See United States v. Wade , 940 F.2d 1375, 1377 (10th Cir. 1991).  In this case, the district court reviewed all seven    Carr  factors and concluded that because Friesen had

---

[4]The Advisory Committee notes to Fed. R. Crim. P. 32(d), now renumbered as Fed. R. Crim. P. 32(e), state that the requirement that the defendant show a "fair and just" reason means that "there is no occasion to inquire into the matter of prejudice unless the defendant first shows a good reason for being allowed to withdraw his plea."  Fed. R. Crim. P. 32(d) advisory committee's note (1983 Amendment) (current version at Fed. R. Crim. P. 32(e)).

knowingly and voluntarily pled guilty, had been represented by competent counsel, and had inconvenienced the court by failing to assert her concerns in her plea hearing, she failed to show any "fair and just reason" why her plea should be withdrawn. In sum, on this record, we cannot say that the court abused its discretion in denying Friesen's motion to withdraw her plea.

II.     *Alleged Violations of Rule 11*

Friesen argues for the first time on appeal that the district court violated Fed. R. Crim. P. 11 by failing to recite the elements of mail fraud and Medicaid fraud and by having the AUSA, rather than the court, state the maximum punishment. Whether we review for plain error, see Fed. R. Crim. P. 52(b); United States v. Blackner, 721 F.2d 703, 705 (10th Cir. 1983), or de novo, including the harmless error provision of Fed. R. Crim. P. 11(h), see United States v. Gigot, 147 F.3d 1193, 1197 (10th Cir. 1998); United States v. Browning, 61 F.3d 752, 753 (10th Cir. 1995); United States v. Gomez-Cuevas, 917 F.2d 1521, 1524 (10th Cir. 1990), the argument lacks merit.

Rule 11 of the Federal Rules of Criminal Procedure is designed to assist the judge in making the constitutionally required determination that a defendant's plea is knowing and voluntary. However, Congress has established no mechanical rule as to how courts are to make this determination. See Fed. R. Crim. P. 11

-17-

advisory committee's note (1974 Amendment) ("The method by which the defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant").

Specifically, the rule contains no requirement that the judge expressly set forth the elements of the charges, nor does it prohibit a judge from eliciting a limited amount of the Rule 11 information through government counsel. The rule simply requires that the court address the defendant personally in the course of determining that the plea is made voluntarily and with understanding of the nature of the charge.

The extensive plea colloquy in this case substantially complied with the requirements of Rule 11(c). [5] Indeed, we agree with the statement to the District Court by Friesen's present counsel. At the hearing on the motion to withdraw her guilty plea, he stated: "Now, the Court said to her [Friesen], 'Is there anything that I could have asked you; what more could I have done?' Well there isn't

_____

[5]Even assuming *arguendo* that Rule 11(c) requires the type of formal recitation Friesen suggests, she has failed to show that a personal recitation by the district court of every element of mail fraud and Medicaid fraud would have changed her decision to plead guilty. Hence, the alleged error would be harmless under Fed. R. Crim. P. 11(h).  See Fed. R. Crim. P. 11(h);  United States v. Wright, 930 F.2d 808, 810 (10th Cir. 1991) (requiring the defendant to show that knowledge of the omission or variance from Rule 11's requirements would have changed his decision to plead guilty).

-18-

anything more you could have done.  You did it all. . . .  The failure here was not

the Court's."   Appellant App. at A-262.

III.    *Ineffective Assistance of Counsel*

Friesen next contends that her guilty plea was the result of ineffective

assistance of counsel.  [6]  This question presents a mixed question of law and fact

that we review de novo; however, we accept the district court's findings of fact

unless clearly erroneous.    See Carr, 80 F.3d at 417.  The two-pronged test for

evaluating ineffective assistance claims, set forth in       Strickland v. Washington   ,

466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), also applies to challenges

to guilty pleas.   See Carr, 80 F.3d at 417.  To prevail, a defendant must show (1)

that his counsel's performance fell below an objective standard of reasonableness,

---

[6]We have consistently held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.  Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  This case involves a direct appeal from the district court's refusal to permit defendant to withdraw her guilty plea, but it stands in a different posture than most direct appeals.  Here, defendant based her motion to withdraw her plea in part on an allegation of ineffective assistance of counsel.  The district court held a lengthy hearing on the issue and then made a specific finding that defendant's counsel provided effective assistance.  Thus, our concern in Galloway that "[a] factual record must be developed in and addressed by the district court in the first instance for effective review," id. at 1240, has been satisfied.  As both parties agree, this case, therefore, presents one of those rare circumstances in which an ineffective assistance of counsel claim can be resolved on direct appeal.

and (2) that counsel's deficient performance was prejudicial to his defense.     See

Strickland , 466 U.S. at 687.  To show prejudice in the guilty plea context, the

defendant must establish that there is a reasonable probability that, but for

counsel's alleged errors, he would not have pleaded guilty and insisted on going

to trial.  See United States v. Kramer  , 168 F.3d 1196, 1201 (10th Cir. 1999);     Hill

v. Lockhart , 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed.2d 203 (1984).

An appellant can establish the first prong of the      Strickland  test by showing

that the attorney's conduct did not fall within the wide range of competence

demanded of attorneys in criminal cases.     Carr , 80 F.3d at 417.  However, in

reviewing an attorney's conduct we are highly deferential and indulge a strong

presumption that such conduct is reasonable under prevailing professional norms.

See id. ; Strickland , 466 U.S. at 689.

While Friesen's allegations, if true, would certainly present a strong case

for ineffective assistance of counsel, the district court expressly rejected Friesen's

testimony on this issue.  Instead, the court credited Mr. Henry's testimony.  On

this record, therefore, Henry's representation has not been shown to have been

constitutionally defective.  Because Friesen fails to make a sufficient showing on

the first  Strickland  prong, her claim of ineffective assistance of counsel fails.     See

Strickland , 466 U.S. at 697 (explaining that "there is no reason for a court

-20-

deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**CONCLUSION**

For the foregoing reasons, we affirm the judgement of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge