UNITED STATES of America,
Plaintiff–Appellee,

v.

Wesley Alan CARR, Defendant–Appellant.

No. 95–8009.

United States Court of Appeals,
Tenth Circuit.

March 25, 1996.

414

Donald L. Fuller, Krampner & Fuller, Casper, Wyoming, for Defendant–Appellant.

Patrick J. Crank, Assistant United States Attorney (David D. Freudenthal, United States Attorney; David A. Kubichek, Assistant United States Attorney, with him on the brief), Casper, Wyoming, for Plaintiff–Appellee.

Before SEYMOUR, Chief Judge, BARRETT, Circuit Judge, and KERN, District Judge.*

* The Honorable Terry C. Kern, United States District Judge for the Northern District of Oklahoma, sitting by designation.

KERN, District Judge.

Appellant Wesley Alan Carr appeals the District Court's denial of his motion to withdraw his plea of guilty. Appellant contends that his plea was not voluntary, that he did not receive effective assistance of counsel, and that the District Court's denial of his withdrawal motion was improper.

## I. *FACTS*

On March 24, 1994, a grand jury returned an indictment against Appellant Wesley Alan Carr and four codefendants[1] for their alleged participation in a conspiracy to distribute marijuana, methamphetamine, and cocaine in Colorado and Wyoming. Appellant was charged in five counts for his alleged role in heading the criminal organization that distributed the drugs. Two of the codefendants, Sivertson and Iverson, pleaded guilty and were sentenced in August 1994. To the three remaining defendants, including Appellant, the government proposed a "package deal" plea bargain: in exchange for all three defendants pleading guilty to the conspiracy charged in Count One of the indictment,[2] Contreras would receive a ten-year sentence, Cunningham would receive a five-year sentence, and Appellant would receive a twenty-year sentence. Both Contreras and Cunningham immediately pleaded guilty.

Appellant filed a signed plea agreement with the court in which he agreed to plead guilty to Count I of the indictment. At Appellant's change of plea hearing on June 13, 1994, District Judge Brimmer scrupulously administered a Rule 11 protocol, Fed. R.Crim.P., which included the following exchanges:

THE COURT: Have you had a full and ample opportunity to discuss these matters with Mr. O'Donnell as your court-appointed defense counsel?

THE DEFENDANT [Appellant]: Yes, I have.

THE COURT: Are you fully satisfied with the services of Mr. O'Donnell?

THE DEFENDANT: Yes.

Appellant App. Vol. I. at 159–60.

THE COURT: All right. Now, tell me this: Is this plea of guilty a voluntary plea?

THE DEFENDANT: Yes, it is.

THE COURT: Is anybody forcing you to plead guilty?

THE DEFENDANT: No.

THE COURT: Is Mr. O'Donnell forcing you to plead guilty?

THE DEFENDANT: No, he's not.

THE COURT: Is it your own idea?

THE DEFENDANT: Yes.

THE COURT: Is it a free act on your part?

THE DEFENDANT: Yes, it is.

THE COURT: Are any circumstances of any kind, economic or otherwise, forcing your guilty plea?

THE DEFENDANT: No, they're not, Your Honor.

Appellant App. Vol. I at 161. Despite Appellant's apparent desire to enter a guilty plea at the June 13th hearing, Judge Brimmer rejected Appellant's plea because of Appellant's reluctance to admit to stipulated factual bases for the plea.

However, upon motion by Appellant to reopen the proceedings, the court gave Appellant another chance the following day. This time, Appellant was more forthcoming in admitting his involvement in a conspiracy to deliver controlled substances, and he executed a successful guilty plea to Count One of the indictment. At this second hearing, Judge Brimmer again inquired into the voluntariness of the plea:

THE COURT: ... You're still guilty today?

THE DEFENDANT: Yes, sir.

THE COURT: And it is voluntary?

THE DEFENDANT: Yes, sir.

THE COURT: And nobody has forced you in the meantime to plead guilty?

---

**1.** The codefendants were Lance J. Sivertson, Joseph Anthony Contreras, Robert C. Cunningham, and Amy L. Iverson.

**2.** Count One of the indictment charged conspiracy to distribute and to possess with intent to distribute methamphetamine, cocaine, and marijuana, in violation of 21 U.S.C. § 846.

THE DEFENDANT: No, Your Honor.

THE COURT: And you're still pleading guilty because you are?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Court finds that the plea of guilty is a voluntary plea and that there is a factual basis for the plea of guilty.

Appellant App. Vol. I at 175.

Three months after he entered his guilty plea, Appellant filed a motion to withdraw his plea, alleging that it was entered as a result of coercion and duress. The alleged sources of this coercion and duress were Appellant's own counsel as well as codefendants and their counsel. The court denied the motion. Appellant later filed another motion to withdraw his plea, alleging, in addition to the previous claims, ineffective assistance of counsel during his first attempt to withdraw his plea. The court denied this motion as well.

## II. *DISCUSSION*

█ Appellant now appeals the District Court's denial of his motion to withdraw his guilty plea. Appellant contends that his plea was not voluntary, that he did not receive effective assistance of counsel,[3] and that the District Court's denial of his withdrawal motion was improper.

### A. *Voluntariness of Guilty Plea*

█ We review the voluntariness of Appellant's guilty plea *de novo. United States v. Libretti,* 38 F.3d 523, 529 (10th Cir.1994), *aff'd,* — U.S. —, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative

courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). A guilty plea entered upon the advice of counsel is invalid if the plea was coerced, *Osborn v. Shillinger,* 997 F.2d 1324, 1327 (10th Cir. 1993), or if the advice of defendant's counsel was not within the range of competence demanded of attorneys in criminal cases, *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369; *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

Appellant advances several reasons why his guilty plea was not voluntary: (1) the structure and application of the plea bargain was coercive; (2) Appellant's attorney, codefendants and their attorneys coerced Appellant into agreeing to the plea bargain; and (3) Appellant's attorney rendered ineffective assistance in the context of the plea process.

### 1. *Structure and Application of Plea Bargain*

█ Appellant asserts that the "package deal" plea bargain offered by the government was inherently coercive. We have recognized "that threats to prosecute or promises of leniency to third persons to induce guilty pleas can pose a danger of coercion" and therefore require special care "to insure that the plea was in fact entered voluntarily and was not the product of coercion." *Mosier v. Murphy,* 790 F.2d 62, 66 (10th Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986). Moreover, we have noted that "the inclusion of such third persons can increase the leverage possessed by prosecutors and therefore imposes upon them a high standard of good faith." *Id.* (citing *United States v. Nuckols,* 606 F.2d 566, 568

---

**3.** We have recently held that "ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir.1995) (en banc). This case involves a direct appeal from the district court's refusal to permit defendant to withdraw his guilty plea, but it stands in a different posture than most direct appeals. Here, defendant based his motion to withdraw his plea in part on an

allegation of ineffective assistance of counsel. The district court held a lengthy hearing on the issue and then made a specific finding that defendant's counsel provided effective assistance. Thus, our concern in *Galloway* that "[a] factual record must be developed in and addressed by the district court in the first instance for effective review," *id.* at 1240, has been satisfied. This case therefore presents one of those rare circumstances in which an ineffective-assistance-of-counsel claim can be assessed on direct appeal.

(5th Cir.1979)). Nevertheless, we have insisted that an accused's choice be respected, and if he " 'elects to sacrifice himself for such motives, that is his choice.' " *Mosier*, 790 F.2d at 66 (citing *Kent v. United States*, 272 F.2d 795, 798 (1st Cir.1959)).

The package deal in the instant case survives this standard of "special care." In contrast to the instant case, the previously cited line of cases involved third persons who had particularly close bonds to the accused: either related by marriage or affianced to the accused.[4] The record in the instant case does not indicate any comparable bonds between Appellant and the codefendants offered the package deal. Rather, it appears that Appellant's ultimate acceptance of the plea bargain was not an act of "sacrifice," but rather an attempt to avoid a harsher sentence. Further, there is no claim or indication that the prosecutors in the instant case did not act in good faith in securing Appellant's plea bargain. Therefore, there is nothing to suggest that the structure or application of the package deal was improperly coercive.

### 2. Alleged Coercion by Attorneys and Codefendants

■ Appellant alleges that despite his explicit desire not to enter a guilty plea, his attorney, Michael O'Donnell, together with codefendants and their attorneys, pressured Appellant into accepting the package deal. Appellant claims that he was "hounded, browbeaten and yelled at" by O'Donnell to accept the plea; that O'Donnell collaborated with codefendants' attorneys to force Appellant to accept the plea; and that when Appellant initially refused to acquiesce, O'Donnell called him "stupid" and "a fucking idiot." While these pressures might have been palpable to Appellant, they do not vitiate the voluntariness of his plea; it was still his choice to make. Indeed, the thorough exchange between the court and Appellant during administration of the Rule 11 protocol, quoted *supra*, clearly demonstrates that Appellant entered his plea willingly and voluntarily at the time he made it.

### 3. Ineffective Assistance of Counsel

■ In support of his claim that his plea was not voluntary, Appellant also contends that his counsel rendered ineffective assistance. This claim presents a mixed question of law and fact that we review *de novo*; nevertheless, we accept the district court's factual findings unless clearly erroneous. *United States v. Boone*, 62 F.3d 323, 326 (10th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 576, 133 L.Ed.2d 499 (1995).

■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Court held that the *Strickland* test also applies to challenges to guilty pleas based on ineffective assistance of counsel, as in the instant case. *Id.* at 58, 106 S.Ct. at 370. To prevail under *Strickland*, an appellant must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced appellant's defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Gillette v. Tansy*, 17 F.3d 308, 310 (10th Cir.1994). An appellant can establish the first prong of the *Strickland* test by showing that the attorney's conduct did not fall within the wide range of competence demanded of attorneys in criminal cases. *Gillette*, 17 F.3d at 310. *See Hill v. Lockhart*, 474 U.S. at 56, 106 S.Ct. at 369. A court's review of the attorney's performance must be highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The second, or "prejudice," requirement focuses on whether counsel's constitu-

---

4. In *Mosier* the third parties were accused's wife and mother-in-law; in *Nuckols* the third party was accused's wife; in *Kent* the third party was accused's fiancee.

tionally ineffective performance affected the outcome of the plea process. *See Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370–71.

■ Appellant contends that his attorney failed to investigate leads on potentially exculpatory evidence and incorrectly told Appellant that he faced a mandatory life sentence if convicted following a trial, thereby leaving him effectively no choice but to plead guilty in the hope of a reduced sentence. We will analyze this argument in two parts. First, O'Donnell's decision not to pursue every lead provided by Appellant was within O'Donnell's sphere of decision making as an attorney. The Supreme Court has explained,

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The District Court found, "Mr. O'Donnell's professional decisions during the investigation and defense of Mr. Carr were well-grounded," *United States v. Wesley Alan Carr, "Carr I",* No. 94–CR–46, slip op. at 14–15 (D.Wyo Nov. 22, 1994), and that O'Donnell's assistance was "thorough," *id.* at 19. The District Court also found O'Donnell to be "one of the most qualified criminal defense attorneys to practice before th[e] Court." *Id.* at 14. *See Gillette v. Tansy,* 17 F.3d 308, 311 (10th Cir.1994) (noting relevance of counsel's experience in determining effectiveness of counsel's assistance). O'Donnell testified at the hearing on the motion to withdraw the plea that he did prepare an adequate defense in anticipation of trial, but decided that to follow up on all of Appellant's.supposed leads was not a prudent use of his office's resources and was unlikely to counter the strong evidence against his client. *Carr I,* slip op. at 10. The District Court found Mr. O'Donnell's testimony more reliable than Appellant's, which the court found "evasive and perjurious," *id.* at 13–14. The trial court was in a superior position to

judge the witnesses' credibility and the weight to be given their testimony, since the court could see the witnesses when they testified and observe their demeanor on the witness stand. *See Dorton v. United States,* 447 F.2d 401, 412 (10th Cir.1971). As there is no evidence in the record that contradicts the District Court's factual findings regarding the adequacy of O'Donnell's preparation of his client's defense, we accept those findings and hold that O'Donnell's preparation was within the wide range of competence demanded of attorneys in criminal cases. Appellant therefore fails to make a sufficient showing on the first *Strickland* prong, and his claim of ineffective assistance of counsel on this ground fails. *See Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984) (explaining that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

■ Second, Appellant claims that O'Donnell told him that if he insisted on going to trial, he would almost certainly be convicted and face a mandatory life sentence, when, in fact, Appellant may not have been subject to a mandatory life sentence due to an infirmity in a prior conviction. Given the weight of the government's evidence against Appellant, it was perfectly appropriate for O'Donnell to inform his client about the great likelihood of conviction. This Court has held that a plea may be involuntary if the attorney " 'materially misinforms the defendant of the consequences of the plea,' " *United States v. Rhodes,* 913 F.2d 839, 843 (10th Cir.1990), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991) (quoting *United States v. Laycock,* 880 F.2d 1184, 1186 (10th Cir.1989)); however, in the instant case, Appellant has shown no prejudice from O'Donnell's alleged failure to inform him about the possible infirmity in the prior conviction. In order to demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Laycock v. State of New Mexico,* 880 F.2d 1184, 1187 (10th Cir.

1989). Here, the information that O'Donnell allegedly withheld from Appellant was clearly contained in the plea letter:

> The United States will file a motion to modify its Notice of Enhanced Penalty pursuant to 21 U.S.C. § 8441(b)(1)(A) *as one of the predicate felony offenses noticed by the Government in that pleading may be legally insufficient to support the enhancement. Thus, the Defendant is no longer subject to the minimum mandatory life sentence* within 21 U.S.C. § 841(b)(1)(A), rather is subject to the minimum 20 year sentence, in that the Defendant has one prior drug felony offense that qualifies for enhancement pursuant to 21 U.S.C. § 841(b)(1)(A).

Plea Letter at ¶ 8, Appellant App. Vol. I at 79–80 (emphasis added). Given the District Court's finding that Appellant was intelligent and experienced with the criminal justice system, *Carr I*, slip op. at 18, 20, and that Appellant said he had reviewed the plea letter before signing it, Appellant App. Vol. I at 156, we may reasonably infer that Appellant knew about the infirmity in his prior conviction and its consequences for sentencing. Therefore, Appellant has failed to show that there is a reasonable probability that but for O'Donnell's failure to tell him about a possible infirmity in a prior conviction, Appellant would not have pleaded guilty and would have insisted on going to trial. Since Appellant fails to show prejudice, this claim fails *Strickland. See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

■ Finally, Appellant contends that O'Donnell breached his duty of loyalty to his client by pursuing a plea bargain against Appellant's wishes and thereafter coercing Appellant to accept the plea bargain. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (noting "counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest."). Appellant implies that O'Donnell, by forcefully advocating that Appellant accept the plea bargain, was working on behalf of the government, not his client. The District Court's factual findings contradict this claim: "Mr. O'Donnell's assistance to Mr. Carr was thorough, dedicated and served the defendant's best interest." *Carr I,* slip op. at 19. We find nothing in the record to indicate otherwise. Regarding O'Donnell's attempts to convince his client to agree to the plea bargain rather than go to trial, the court noted, "O'Donnell investigated the case and concluded that there was a high possibility that Carr would be convicted and ... that it was therefore best to investigate a plea bargain." *United States v. Wesley Alan Carr, "Carr II",* No. 94–CR–46, slip op. at 2 (D.Wyo Feb. 8, 1995). Given the weight of evidence against Appellant and the high probability of a lengthy sentence, it was perfectly reasonable for O'Donnell to discuss a plea bargain with the government and his client—and even to attempt to convince his client that accepting the plea bargain was in his best interest—while simultaneously preparing a defense for trial. We therefore hold that Appellant has not satisfied the first *Strickland* prong with respect to his "duty of loyalty" claim. In conclusion, we hold that Appellant entered the guilty plea voluntarily.

### B. Propriety of Court's Denial of Motion to Withdraw Plea

■ We review the District Court's denial of Appellant's motion to withdraw his guilty plea for abuse of discretion. *United States v. Wade,* 940 F.2d 1375, 1376 (10th Cir.1991). We will not reverse unless Appellant can show that the trial court acted unjustly or unfairly. *United States v. Gordon,* 4 F.3d 1567, 1573 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994). Federal Rule of Criminal Procedure 32(d) states that if a motion to withdraw is made before sentencing, a district court "may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Although the burden is on the defendant to show such a reason, we have held that motions to withdraw guilty pleas before sentencing are to be freely allowed, viewed with favor, treated with liberality, and given a great deal of latitude. *United States v. Wade,* 940 F.2d 1375, 1377

(10th Cir.1991); *United States v. Rhodes*, 913 F.2d 839, 845 (10th. Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991).

■ This Court has enumerated the following factors to consider in determining whether an accused has met the burden of establishing that there is a fair and just reason for allowing withdrawal of a guilty plea:

   (1) whether the defendant has asserted his innocence;

   (2) prejudice to the government;

   (3) delay in filing defendant's motion;

   (4) inconvenience to the court;

   (5) defendant's assistance of counsel;

   (6) whether the plea is knowing and voluntary; and

   (7) waste of judicial resources.

*United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994). We will take up each of these factors in turn.

*1. Assertion of Innocence:* The District Court, although highly skeptical of Appellant's assertion of innocence, held that "this factor only requires that Mr. Carr assert his innocence, which he has done." *Carr I*, slip op. at 17–18. We agree with the District Court's conclusion. This factor weighs in Appellant's favor.

*2. Prejudice to government:* Allowing Appellant to withdraw his guilty plea would prejudice the government in several ways. At the time of the motion to withdraw the plea, three of the codefendants had already been sentenced and apparently had already received the benefit of government motions for substantial assistance. Consequently, their incentive to provide truthful and complete testimony in a future trial of Appellant is now greatly reduced. The government also states that it cannot now locate several original witnesses. Further, if Appellant is allowed to withdraw his plea and go to trial, the government will have to expend resources re-issuing approximately seventy subpoenas, and government personnel will have to disrupt work on current cases in order to revisit this case. Some degree of

prejudice to the government is, of course, inevitable from a plea withdrawal; however, in this case the prejudice is substantial.

*3. Delay in filing motion to withdraw plea.* Appellant delayed three months in filing his motion to withdraw his plea. Such extended delays weigh against granting a withdrawal motion because they often result in substantial prejudice to the government and may suggest manipulation by the defendant.

> [I]f the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerab[le] ... force. The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case.

*United States v. Vidakovich*, 911 F.2d 435, 439–40 (10th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1055 (1991) (delay of five months).

Indeed, in the instant case, the District Court found that Appellant was "engaging in a manipulative course of conduct designed to avoid the consequences of his guilt," and that the delay between the plea and the withdrawal motion had substantially prejudiced the Government's ability to prosecute the case. *Carr I*, slip. op. at 13. While it appears from Appellant's pleadings that he may not have had the full benefit of his counsel for part of the three-month period of delay, he does not present forceful reasons to explain the entire period of delay. The total length of the delay along with its resulting prejudice to the government weigh heavily against Appellant's motion.

*4. Inconvenience to the court.* As with the prejudice factor, some degree of inconvenience to the court from a plea withdrawal is inevitable. In the instant case, the government alleges significant inconvenience, noting that it anticipates a four-week trial with seventy witnesses, should the Appellant's motion be granted. The anticipated length and complexity of the government's case against the Appellant should not necessarily weigh against the Appellant since he originally had

a right to a jury trial. Nevertheless, inconvenience to the court, including the significant disruption of its docket and consequent delays in other pending cases, is a factor that must weigh against the Appellant.

5. *Defendant's assistance of counsel.* For the reasons discussed in Part A, *supra,* we hold that counsel's conduct was within the range of competence demanded of attorneys in criminal cases. This factor does not weigh in Appellant's favor.

6. *Voluntariness of guilty plea.* For the reasons discussed in Part A, *supra,* we hold that the plea was voluntary. This factor does not weigh in Appellant's favor.

7. *Waste of judicial resources.* Again, some waste of judicial resources from a plea withdrawal is inevitable. Though there does not appear to be an inordinate waste in the instant case, this consequence must be taken into account and does weigh against the Appellant.[5]

*Conclusion:* Taken together, the above factors weigh decidedly against Appellant. The Appellant has failed to show that the trial court acted unjustly or unfairly in denying his motion to withdraw his guilty plea. Consequently, we hold that the District Court did not abuse its discretion in denying Appellant's motion.

## III. *CONCLUSION*

We hold that Appellant Carr's guilty plea was voluntary and that the District Court's denial of Appellant's withdrawal motion was proper. The District Court's denial of Appellant's motion to withdraw his guilty plea is therefore AFFIRMED.

---

**5.** In *United States v. Glover,* 911 F.2d 419 (10th Cir.1990), this Court suggested an additional factor to consider: the likelihood of conviction. In that case, this Court concluded, "In the face of [defendant's] admitted and palpable guilt, permitting the defendant to withdraw his plea would only result in a postponement of the inevitable." *Id.* at 421 (denying withdrawal motion). The District Court in the instant case made a similar finding:

The Court . . . finds . . . that the factual basis of the plea was detailed and corroborated by the testimony of his co-defendants who also pled guilty, and that the defendant knew the consequences of his plea. The Court is therefore convinced, without the slightest shadow of a doubt, of the guilt of Defendant Carr.

*Carr I,* slip op. at 15. These findings militate against the Appellant's motion.