**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ANTHONY DEWAYNE HASSON,

      Defendant-Appellant.

No. 07-2018
(D.C. No. CR-05-1599 MCA)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

Anthony Dewayne Hasson appeals his conviction on one count of
conspiracy to distribute controlled substances and one count of conspiracy to
launder money, as well as his resulting sentence of 292 months' imprisonment.
As to his convictions, Hasson urges that the district court erred in refusing to
allow him to withdraw his guilty plea and that he received constitutionally
deficient representation in entering the plea. With respect to his sentence, he

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

maintains that the district court miscalculated his sentencing range by adding a relevant specific offense characteristic to his base offense level after, rather than before, grouping his separate counts of conviction.

Because we conclude that the district court did not abuse its discretion in refusing to allow Hasson to withdraw his plea and that his claim of ineffective assistance of counsel is not properly pursued on direct appeal, we affirm his convictions. We reverse and remand his sentence, however, because the district court miscalculated Hasson's sentencing range by grouping the distinct counts of conviction before applying a specific offense characteristic relating to only one of the counts, in contravention of U.S.S.G. § 1B1.1. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**I**

On July 26, 2005, Hasson, along with six codefendants, was indicted by a grand jury in New Mexico on charges that he: (1) conspired to distribute more than 1000 kilograms of marijuana and more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 ("Count 1"); (2) engaged in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a), (c), and 18 U.S.C. § 2 ("Count 2"); and (3) conspired to launder money, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), (h), and 1957 ("Count 3").[1] Although he

_____

[1] Given the number of defendants and the 20,000 to 30,000 pages of expected discovery, the district court designated this case as complex pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii).

initially pleaded not guilty to the charges, Hasson later entered into a plea agreement with the government, in which he consented to plead guilty to Counts 1 and 3 in exchange for the government's agreement to dismiss Count 2.[2]

The signed plea agreement contained several nonbinding stipulations between the parties regarding the sentence calculation, three of which are relevant to this appeal. First, the base offense level calculation under the United States Sentencing Guidelines ("Guidelines") for Count 1 would be set at 34, because of Hasson's "involvement in, or awareness of, the distribution of between 3,000 and 10,000 kilograms of marijuana." See U.S.S.G. §§ 1B1.3, 2D1.1 (2005). Second, the base offense level for Count 3 would be set at 32, based on Hasson's "laundering of the proceeds of between 1,000 and 3,000 kilograms of marijuana." See §§ 1B1.3, 2S1.1(a), 2D1.1(c). Finally, the parties agreed that Hasson "has clearly demonstrated an affirmative acceptance of personal responsibility for [his] criminal conduct," and that he therefore would receive a three-level reduction in the total offense level. See § 3E1.1. On August 23, 2006, Hasson went before the district court and changed his plea to guilty in accordance with the terms of

---

[2] Although Count 1 of the indictment alleged that Hasson had intentionally conspired to distribute both cocaine and marijuana, Hasson pleaded guilty only to conspiring to distribute marijuana.

the plea agreement. The court accepted the plea and set the case over for sentencing.[3]

Hasson's Presentence Investigation Report ("PSR") grouped the two counts of conviction together under § 3D1.2(d), which requires that multiple counts be grouped together when the offense behavior is ongoing or continuous in nature. Relying on the stipulations in the plea agreement, the PSR then set the base offense level for the combined counts at 34, the greater of the two base offense levels. After grouping the counts, the PSR added two levels under § 2S1.1(b)(2)(B) because Hasson was convicted of violating 18 U.S.C. § 1956(h) and four levels under U.S.S.G. § 3B1.1(a) because Hasson was alleged to have been an organizer or leader of criminal activity that involved five or more participants or that was otherwise extensive. Following a three-level deduction for acceptance of responsibility, see § 3E1.1, the PSR calculated a total offense level of 37. Taking this offense level together with Hasson's criminal history category of IV, the PSR yielded an advisory sentencing range of 292 to 365

---

[3] In accepting Hasson's guilty plea, the court stated:

It is the finding of this Court . . . that this defendant is fully competent and capable of entering an informed plea to each of two counts, 1 and 3, he is aware of the nature and consequences of his pleas, and the pleas to Counts 1 and 3 of the indictment are knowing[] and voluntary pleas supported by a basis in fact containing each of the essential elements of the offense. I accept your pleas of guilty as to Counts 1 and 3, and I adjudicate you guilty of those offenses.

months' imprisonment for Count 1, and 240 months' imprisonment—the statutory maximum under 18 U.S.C. § 1956(h)—for Count 3.

On December 11, 2006, approximately four months after the district court accepted Hasson's plea and only four days before his scheduled sentencing hearing, Hasson moved to withdraw his guilty plea. He claimed that he did not understand the consequences of his decision to plead guilty at the time he entered his plea and that his plea was therefore not knowingly or voluntarily given. Specifically, he maintained that although he had pleaded to participating in a conspiracy, he had not admitted to being a leader, supervisor, manager, or organizer of the conspiracy. Hasson also noted that the plea negotiations between his counsel and the government contemplated a sentencing range "between 11 and 15 years," and that the government never indicated that it would seek the adjustments discussed in the PSR. He posited that "the government [was] seeking to get through the sentencing process what was not negotiated in the plea process."[4]

At Hasson's sentencing hearing on December 15, 2006, the district court entertained argument on the motion to withdraw the plea. Weighing the factors for determining whether to allow a defendant to withdraw a guilty plea, see, e.g., United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2005), the district court

---

[4] Prior to filing his motion to withdraw the guilty plea, Hasson also challenged the sentencing adjustments noted in the PSR in a written sentencing memorandum.

found that Hasson had not made the requisite showing. It thus denied his motion and proceeded to sentencing.

As to the specifics of the PSR, Hasson objected to the manner in which the two-level adjustment under U.S.S.G. § 2S1.1(b)(2)(B) was applied. He urged that the adjustment should have been added to the original base offense level for Count 3 only, rather than to the grouped counts, thereby yielding an adjusted base offense level of 34, instead of 36. Hasson also challenged the leadership adjustment under § 3B1.1(a), alleging that there was insufficient evidence in the PSR to justify the adjustment and that without more detailed allegations regarding the other criminal participants, he could not effectively argue against the proposed adjustment.

The court found that the two-level adjustment for money laundering was properly applied. It was troubled, however, by the evidentiary basis for the leadership adjustment, and ordered further briefing on the matter. Sentencing was recessed until January 16, 2007.

At the reconvened hearing, the district court found that the evidence supported application of the leadership adjustment, and it adopted the PSR's calculations. As to Count 1, the court imposed a sentence of 292 months' imprisonment, the bottom of the applicable Guidelines range, and a concurrent 240 months' imprisonment for Count 3. Hasson now appeals from the judgment and sentence entered against him.

-6-

## II

We begin with Hasson's claim that the district court erred in denying his motion to withdraw his guilty plea. He advances a two-fold argument. First, he asserts that his trial counsel was constitutionally ineffective in failing to properly advise him of the potential sentencing consequences of the plea agreement and that he should have been able to withdraw his plea as a result of counsel's ineffectiveness. Second, he maintains that the district court abused its discretion in denying his motion to withdraw his guilty plea because the relevant factors favor withdrawal. Because the first argument is not properly pursued on direct appeal, we dismiss it. We reject the second contention on the merits.

## A

In contesting the district court's denial of his motion to withdraw, Hasson insists that his two trial attorneys were constitutionally ineffective in counseling him with respect to the proposed plea agreement. Specifically, he claims that because his attorneys failed to properly advise him of his potential sentencing range, he must be allowed to withdraw the guilty plea.[5]

A plea agreement is not enforceable if it is the product of ineffective assistance of counsel. See United States v. Edgar, 348 F.3d 867, 869 (10th Cir. 2003). But, except in rare circumstances, claims of ineffective assistance of

---

[5] Hasson is not represented by the same counsel on appeal as he was in the district court.

counsel must be presented in collateral proceedings.  United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  When such claims are pursued on direct appeal, they "are presumptively dismissible, and virtually all will be dismissed."  Id.  By encouraging collateral proceedings, this rule allows the district court to develop the factual record and to reach an initial decision on the merits of the claim.  See Massaro v. United States, 538 U.S. 500, 505-06 (2003).  It also ensures that we have an adequate appellate record upon which to base our decision.  Galloway, 56 F.3d at 1240.

We have, of course, permitted exceptions to this general rule, but only where the factual record on ineffectiveness is fully developed.  See, e.g., United States v. Hamilton, 510 F.3d 1209, 1213 (10th Cir. 2007) (holding than an ineffectiveness claim was reviewable on direct appeal where the district court "held a lengthy hearing on the matter" and a "factual record enabling appellate review already exist[ed]"); United States v. Carr, 80 F.3d 413, 416 n.3 (10th Cir. 1996) (reviewing a claim of ineffective assistance of counsel on direct appeal where "[t]he district court held a lengthy hearing on the issue and then made a specific finding that defendant's counsel provided effective assistance").  In other words, unless the record sufficiently describes the advice given by defendant's counsel concerning the plea decision, we must dismiss the Sixth Amendment claim and leave it for consideration on collateral review.  United States v. Carver, 160 F.3d 1266, 1268 (10th Cir. 1998).

Our review of the record here demonstrates that Hasson's claim does not fall within the narrow category of claims that require no further development. Because Hasson did not assert this argument below, the district court never had an opportunity to consider the ineffectiveness question, much less develop a record on the issue. This case thus stands in stark contrast to cases such as Hamilton and Carr, where we considered the claim of ineffectiveness on direct appeal. In Hamilton, the district court convened "a lengthy hearing" to weigh the ineffectiveness question and its effect on the defendant's decision to plea guilty—all before the case arrived in this court on direct appeal. 510 F.3d at 1213. Likewise, in Carr, the district court received testimony from the defendant's prior counsel and had the first cut at considering whether that testimony showed ineffective assistance. 80 F.3d at 418. In this case, by contrast, the district was never apprised of any concerns about Hasson's representation with respect to the plea agreement. As a result, the sum total of record evidence we have on this question is Hasson's trial attorneys' statement in the motion to withdraw the guilty plea that counsel "understood that the sentencing range for [Hasson] would be between 11 and 15 years if [he] pled as suggested in the plea agreement." That allegation, standing alone, is insufficient to enable meaningful appellate review of his claim. Consequently, we dismiss this claim on direct appeal. Should Hasson intend to pursue the issue further, he must raise it in a collateral proceeding pursuant to 28 U.S.C. § 2255.

**B**

We turn to Hasson's claim that the district court abused its discretion in denying his motion to withdraw his guilty plea. Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea before the district court imposes sentence if he can "show a fair and just reason for requesting the withdrawal." In evaluating whether such a justification exists, a district court must consider:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; [and] (7) whether the granting of the motion would cause a waste of judicial resources.

United States v. Black, 201 F.3d 1296, 1299-1300 (10th Cir. 2000); see also Yazzie, 407 F.3d at 1142. We review the district court's denial of a motion to withdraw for an abuse of discretion. United States v. Jones, 168 F.3d 1217, 1219 (10th Cir. 1999). Although a district court should generally freely allow a defendant to withdraw a guilty plea, we will not reverse the court's denial of such a motion unless the defendant shows that the court acted "unjustly or unfairly." United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999).

Analyzing the relevant factors, the district court concluded that each consideration weighed against allowing Hasson to withdraw his plea. We fail to discern any abuse of discretion in that decision.

-10-

To begin with, Hasson has never asserted his legal or factual innocence to the two counts to which he pleaded guilty. See Hamilton, 510 F.3d at 1214 (reasoning that a defendant may satisfy the first factor by asserting legal or factual innocence). He admitted to the factual basis underpinning those counts at his change of plea hearing, and he has not since repudiated that admission. See id. at 1215. To be sure, his plea withdrawal was premised not on an assertion of innocence but instead on a claim that he misunderstood his potential sentencing exposure. That is insufficient to satisfy his burden of showing that he has asserted either his factual or legal innocence.

The other relevant factors also weigh against Hasson. As for prejudice to the government, it would be required to prepare for an unanticipated trial. In a case such as this, which the court designated as complex under 18 U.S.C. § 3161(h)(8)(B)(ii), the prejudice to the government is more obvious because trial preparation would entail considerable effort. Hasson also delayed the filing of his withdrawal motion until just days before sentencing, having waited almost four months after entering his guilty plea. See Carr, 80 F.3d at 420 (reasoning that a three-month delay in filing a motion to withdraw a plea weighs against the defendant); United States Vidakovich, 911 F.2d 435, 439-40 (10th Cir. 1991) (recognizing that a five-month delay weighs against the defendant). The fourth and seventh factors, which consider the waste of the resources of the court and the potential for inconvenience to it, similarly favor denying withdrawal of the

-11-

plea.  See United States v. Graham, 466 F.3d 1234, 1239 (10th Cir. 2006) (recognizing that these two factors "trigger[] similar concerns").  Scheduling a last-minute trial in a complex case would necessarily disrupt the court's docket and cause delays in other cases.  Considering the anticipated length of a trial in this case, which the district court estimated at approximately two weeks, the court would suffer substantial inconvenience.  Moreover, prior to accepting the plea, the trial court had already spent a great deal of time crafting a tailored set of pretrial deadlines.  If the court were to permit the plea to be withdrawn, it would have to retread much of the ground it had already covered.  See United States v. Siedlik, 231 F.3d 744, 750 (10th Cir. 2000).

Although Hasson raises an allegation of ineffective assistance of counsel, we cannot conduct a comprehensive review of that issue for the reasons discussed.  We note only that Hasson had two trial lawyers at his side when he entered his plea, that the district court gave him numerous opportunities to procure the counsel of his choosing, and that he never alleged below that he was in any way dissatisfied with the attorneys who assisted him in entering the plea. Indeed, at his change of plea hearing, Hasson responded in the affirmative to the court's inquiry regarding whether he was "fully satisfied with the legal advice, with the counsel, with the services that [had] been provided to [him] in this case by [his] attorneys."  The district court did not err in concluding that this factor weighed against his request.

Finally, there is no indication in the record that the plea was anything but knowingly and voluntarily given. During his change of plea hearing, Hasson acknowledged that he was giving the plea "freely of [his] own will," that he had not been "forced . . . to plead guilty in this case," and that he had read the plea agreement and indictment. He further agreed that he had discussed the documents with his attorneys, that he had no questions about the documents, and that he understood all of the rights he was waiving by entering a guilty plea. We are thus satisfied that the district court did not abuse its discretion in rejecting Hasson's belated attempt to withdraw his plea. His conviction is therefore affirmed.

## III

We now address the final issue presented: Hasson's challenge to the procedural reasonableness of his sentence. Hasson maintains that the district court miscalculated his advisory Guidelines range by grouping the two separate counts of conviction <u>before</u> applying the specific-offense-characteristic increase required by U.S.S.G. § 2S1.1(b)(2)(B) to his Count 3 base offense level. We review the district court's legal application of specific guidelines de novo, and review any facts found in support of those guidelines for clear error. <u>United States v. Todd</u>, 515 F.3d 1128, 1135 (10th Cir. 2008).

As the government concedes, there is little question that the PSR incorrectly applied the two-level increase mandated by § 2S1.1(b)(2)(B) after, rather than before, grouping the separate counts of conviction under § 3D1.2(d).

-13-

The Guidelines plainly prescribe a step-by-step process for calculating a defendant's total offense level. See § 1B1.1; see also United States v. Ventura, 353 F.3d 84, 92 (1st Cir. 2003) (describing offense-level calculation process). First, when a defendant is convicted of multiple counts, the sentencing court is obliged to separately determine the offense level for each count. See § 1B1.1(d); see also United States v. Liddell, 492 F.3d 920, 924 (7th Cir. 2007) ("The guidelines explicitly state that district courts should compute sentencing guideline ranges on a count-by-count basis."). Once the base offense level for each count has been determined, the court must then apply any appropriate specific offense characteristics from Chapter Two of the Guidelines, § 1B1.1(b), and then any relevant adjustments from the first three parts of Chapter Three of the Guidelines, § 1B1.1(c). Only at that point may the court group various counts together, if required, and adjust the overall offense level. § 1B1.1(d).

In this case, the district court, relying on the PSR, transposed two of the requisite steps and thereby miscalculated the appropriate sentencing range. By grouping the two separate counts of conviction before it applied § 2S1.1(b)(2)(B)'s specific offense characteristic for Count 3, the court added two levels to the grouped offense level that should have been added only to Count 3's base offense level.[6] This had the effect of overstating Hasson's total offense level

_____

[6] Although the error had no net effect on the total offense level calculation in this case and Hasson does not challenge it on appeal, we note that the PSR also incorrectly grouped the separate counts of conviction together before applying the

-14-

by two levels. As a result, Hasson's advisory Guidelines range for Count 1 was miscalculated as being between 292 and 365 months when it should have ranged from 235 to 293 months.[7]

When the Guidelines range has been miscalculated, we must remand for resentencing unless the error is harmless. See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). Harmlessness must be proven by a preponderance of the evidence and requires a showing that the error did not affect the district court's sentence selection. United States v. Conlan, 500 F.3d 1167, 1170 (10th Cir. 2007). The burden of making this showing falls on the beneficiary of the error—in this case, the government. Id.

When a defendant is sentenced at the bottom of the sentencing range and the district court committed procedural error in imposing that sentence, there is a strong indication that, absent the error, the district court might have selected a lesser sentence. See, e.g., United States v. Lozano, 514 F.3d 1130, 1135-36 (10th

---

role-in-the-offense adjustment under § 3B1.1(a). See § 1B1.1(c)-(d).

[7] In accordance with the plea agreement's stipulations, which the PSR and the district court accepted, the base offense level for Count 3 was properly set at 32. It should have then been increased by 2 levels under § 2S1.1(b)(2)(B), which would have yielded an offense level of 34 for Count 3, the same offense level as stipulated for Count 1. Adding the role-in-the-offense adjustment under § 3B1.1(a) (likely to Count 1 based on the PSR) would have provided an adjusted offense level of 38 for Count 1. By then grouping the counts in accordance with § 3D1.2(d) and subtracting 3 levels for Hasson's acceptance of responsibility, the PSR would have resulted in a total offense level of 35 for the combined counts, or two levels lower than that indicated in the PSR.

Cir. 2008); <u>Conlan</u>, 500 F.3d at 1170. Such is the case here. Had the district court sentenced Hasson at the bottom of a correctly calculated Guidelines range, he would have received a sentence of 235 months' imprisonment, or some 57 months fewer than the sentence he received. Accordingly, we reverse and remand for resentencing.

## IV

In light of the foregoing, we **AFFIRM** Hasson's convictions, but **REVERSE** and **REMAND** his sentence to the district court with instructions to vacate and resentence the defendant.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge