NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

Nos. 14-1542 & 14-4146

———————————

UNITED STATES OF AMERICA

v.

JOSEPH LEE OLLIE,

Appellant

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action Nos. 1-12-cr-00018-001/1-12-cr-00009-001)
District Judge: Honorable Maurice B. Cohill, Jr.

———————————

Submitted Under Third Circuit LAR 34.1(a)
June 18, 2015

Before: AMBRO, FUENTES, and GREENBERG, Circuit Judges

(Opinion filed: August 19, 2015)

———————————

OPINION[*]

———————————

AMBRO, Circuit Judge

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This appeal concerns two separate criminal cases involving the same defendant, Joseph Ollie. He appeals the denial of a motion to withdraw a guilty plea in one case and the denial of a motion for judgment of acquittal in the other. We affirm.[1]

## I.

In March 2012, Ollie was charged with falsifying a firearms transaction record, 18 U.S.C. § 922, and a firearms purchase form, 18 U.S.C. § 924. The indictment alleged that Ollie, who had a prior rape and forgery conviction, falsely stated on a firearm purchase form that he did not have any prior convictions. On December 5, 2012, Ollie entered a guilty plea with respect to both charges. Almost two weeks later, he filed a *pro se* motion seeking to withdraw his guilty plea and obtain a new attorney. A month after that, the District Court granted Ollie's request for a new attorney. On March 4, 2013, the Court held a hearing on the request to withdraw his guilty plea where it heard testimony from Ollie and his first attorney, Thomas Patton. The Court denied the request to withdraw the guilty plea two months later.

Ollie argues that the District Court erred by denying the motion to withdraw his guilty plea. We review those decisions for "abuse of discretion," *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001), and factual findings for clear error, *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 257–58 (3d Cir. 2008).

A guilty plea "may not automatically be withdrawn at the defendant's whim." *Brown*, 250 F.3d at 815. Rather, the defendant has a "substantial" burden to show a "fair

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

and just reason" for the withdrawal. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing Fed. R. Crim. P. 32(e)). The defendant's reason is assessed based on three primary factors: "(1) whether the defendant asserts her innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea." *Brown*, 250 F.3d at 815. "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Id.*

Ollie argues the first factor favors withdrawal because he asserted his innocence in the District Court hearing and continues to do so on appeal. Under our case law, however, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252.[2] They must be "buttressed by facts in the record that support a claimed defense." *Id.* (quoting *Brown*, 250 F.3d at 818).

The District Court found Ollie's assertion of innocence incredible for two reasons. *United States v. Ollie*, No. 12-009, 2013 WL 1871385, *3 (W.D. Pa. May 3, 2012). First, his theory of innocence changed over time. *Id.* Ollie's *pro se* motion to withdraw the guilty plea argued he was innocent because "he is uneducated[ and] did not understand the form *he filled out*, and as a result, mistakenly made a false statement to obtain a weapon." *Id.* (emphasis in original). In contrast, at the hearing on Ollie's motion to

---

[2] Not all courts have adopted this rule. *See, e.g.*, *United States v. Carr*, 80 F.3d 413, 420 (10th Cir 1996) (holding that an assertion of innocence, however implausible, is sufficient to weigh in favor of a motion to withdraw a guilty plea). Ollie has not asked us to reconsider our precedent.

withdraw the guilty plea, he claimed innocence because he "wasn't the one that signed the documents." *Id.* (emphasis omitted). Second, before Ollie entered the guilty plea, the Government described at length the facts it intended to prove at trial, which included that Ollie had signed the form. When asked by the Court whether he "agree[d] with [the prosecution's] statement of what happened," Ollie responded "Yes." *Id.* at *3–4.

On appeal, he argues that the Court's credibility finding was in error because he "[a]t no point . . . sa[id] the words '. . . I'm guilty.'" Appellant's Br. at 28. As no magic words are necessary to admit guilt, we cannot conclude that the District Court abused its discretion by finding incredible Ollie's claim of innocence.

Ollie next asserts that the third factor—the strength of the reason for withdrawing the guilty plea—supports his motion. He first argues that counsel failed to inform him of his right to a suppression hearing and that he is entitled to suppression because "police continu[ed] to question him at the police station after he requested [that] the questioning cease and he have an attorney." Appellant's Br. at 26. But Ollie does not argue the suppression claim has any merit, nor does he provide sufficient information to assess it independently. A defendant cannot generate a reason to withdraw a guilty plea by identifying a potential legal claim in only the vaguest terms.

Ollie argues as well that counsel did not inform him of the right to trial or discuss any trial strategies with him. The District Court rejected this argument because it informed Ollie at the plea hearing he had a right to a jury trial, and he indicated that he understood. *Ollie*, 2013 WL 1871385, *6. The Court also found credible the testimony of counsel that he and Ollie had discussed possible defenses to the charges. *Id.*

4

Continuing on, Ollie posits that his plea was not voluntary because counsel "bullied" him into entering the plea. The District Court was not persuaded because it had asked Ollie at the change-of-plea hearing whether anyone had "threatened [him] or . . . forced [him] in any way to indicate that [he] want[ed] to plead guilty," and he answered "No." *Id.* The Court also asked Ollie whether he "underst[ood] that [he] may not, at a later date after today, claim that there were any . . . threats made by any person that motivated or caused [him] to enter this plea," and he responded "Yes." *Id.* He gives no argument to challenge the District Court's decision on this point.

Finally, Ollie contends that counsel never informed him of the elements of the charged offenses until the plea hearing. The District Court, however, found this claim "contradicted . . . Attorney Patton's credible testimony," *Id.* at *4, and Ollie does not argue this factual finding was clear error.

Ollie has failed to convince us the District Court abused its discretion in finding that the first and third factors cut against his motion to withdraw the guilty plea. We thus affirm the District Court's denial of the motion to withdraw.

### III.

Ollie was charged in his second case with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), unlawful possession of a firearm while subject to a court order prohibiting possession of a firearm, 18 U.S.C. § 922(g)(8), and knowing possession of a stolen firearm, 18 U.S.C. § 922(j). After the jury entered a guilty verdict on all charges, Ollie filed a motion for judgment of acquittal, which was denied.

Ollie describes the evidence presented at trial as follows. Mr. Eugene Hart testified he was driving home on November 25, 2011, when he saw on the porch of his residence two African American adults, between five feet ten inches and six feet in height. He also stated that during the investigation he told an officer that the suspects were six feet tall and had a "thin to medium build." App. 410. After seeing the two men, Hart drove past the house and called his girlfriend Stephanie Carniewski to ask about them. During the call, she began screaming "they're stealing my guns." App. 396. Hart turned his car around, pursued a van with two passengers driving from the house, and informed the Pennsylvania State Police of the crime. At trial, Hart identified Ollie as one of the people standing on the porch of the house.

Carniewski's testimony confirmed that Hart had called and informed her that two African Americans were on the porch. She testified that she walked out of her bedroom and saw a black male wearing a black hoody standing at her gun cabinet. The man grabbed a shotgun, ran out of the house, and jumped into a van.

Roxanne Roberts testified that she went to the Harts's residence with Ollie on the day of the crime. She said she remained in the vehicle while he entered the house. When she heard a scream from within the house, she came closer to encourage Ollie to leave. According to Roberts, Ollie then ran out of the house with a shotgun, entered the van, and they drove away. At some point, Ollie threw the shotgun out of the passenger-side window, and they were later stopped by the police. On cross-examination, Roberts indicated that the Government "[went] more lightly on [her] because [she] agreed to cooperate against" Ollie. App. 452.

6

Pennsylvania State Trooper Kirk Forsythe testified that on the day of the crime he conducted a traffic stop on Ollie and Roberts's vehicle after learning that a white Pontiac minivan had been used in a burglary nearby. Forsythe did not observe anyone throw a weapon out of the window of the vehicle and did not find any weapon inside.

Ollie testified that at the time of the crime he was 5 feet 6 inches and weighed roughly 210 pounds. He agreed to go "scrapping" with Roberts and her boyfriend, Smiley Morrow, a black male who was close to six feet tall. Roberts and Morrow drove in one car, and Ollie drove in his van to the Harts's residence. When they arrived, Roberts and Morrow entered the house. Roberts left the house with a shotgun and entered Ollie's van. When he asked how she obtained the shotgun, Roberts responded that she received it in exchange for sex. According to Ollie, he later informed Roberts he was not allowed to be around guns. She wiped the weapon off and threw it out the window.

In ruling on a motion for judgment of acquittal, the District Court reviews the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt based on the available evidence." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted). "A finding of insufficiency should be confined to cases where the prosecution's failure is clear." *Id.* (internal quotation marks omitted). We exercise plenary review of the District Court's decision. *Id.*

Ollie concedes that, when viewed "in isolation," the evidence at trial meets the Government's burden to support the conviction. Appellant Br. at 42. He claims

7

nonetheless that his own testimony was "arguably more credible" than that of the Government's key witnesses. He challenges Hart's in-court identification by comparing evidence of his (Ollie's) actual height and weight—five feet six inches and 210 pounds—with Hart's testimony that the suspects were between five feet ten inches and six feet tall and had a "thin to medium build." But Hart observed the suspects while driving, from 25 feet away, and while they were standing on a patio raised six-to-eight inches off the ground. With respect to Roberts' testimony, Ollie argues that she lied to obtain lenience from the Government. Yet courts "must be ever vigilant in the context of [Federal Rule of Criminal Procedure] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie,* 403 F.3d at 133. The jury believed Hart's and Roberts' testimony, and it is not our place to disturb that judgment.

We thus affirm.