**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL ALLEN COATES,

      Defendant-Appellant.

No. 11-8019
(D.C. No. 2:10-CR-00269-WFD-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Michael Allen Coates pleaded guilty in the United

States District Court for the District of Wyoming to conspiracy to distribute, and

to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §

841(a)(1), (b)(1)(A) and 21 U.S.C. § 846; and to possession of a firearm in

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).  He

---

[*]      This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

      After examining the appellate record, this three-judge panel
determined unanimously that oral argument would not be of material assistance in
the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R.
34.1(G).  The case is therefore ordered submitted without oral argument.

was sentenced to fifteen years' imprisonment on the first count and five years' imprisonment on the second count, to be served consecutively, and to be followed by five years of supervised release on each count, to run concurrently. Mr. Coates filed a timely notice of appeal. For the reasons that follow, we affirm.

## I. INTRODUCTION

We are addressing Mr. Coates's appeal under the analytical framework of *Anders v. California*, 386 U.S. 738 (1967).[1] Initially, Mr. Coates filed a pro se notice of appeal alleging "insufficient" counsel, stating that he was "misl[ed] about the legal process[]," and that he had "directed [trial counsel] to make [a] motion [to withdraw his plea on] the same day as [the date of his guilty plea]." R., Vol. 1, at 412 (Pro Se Notice of Appeal, filed Apr. 1, 2011). He claims that his counsel used "scare tactics" to cause him to provide the assistance to the government that precipitated his plea agreement, and that he was coerced "by [his] counsel to tell the United States what they wanted to hear even if [he] was lying." *Id.*

Mr. Coates's "main objection to the sentence is the time that has been imposed." *Id.* at 411 (Pro Se Ltr. to Dist. Ct., filed Apr. 5, 2011). He claims that his trial counsel "misl[ed] [him] about the plea arrangement in terms of [the

---

[1] By way of summary, the Supreme Court held in *Anders* that, if defense counsel determines that his client's appeal is "wholly frivolous," counsel must inform the court, request permission to withdraw, and also submit "a brief referring to anything in the record that might arguably support the appeal." 386 U.S. at 744.

length of the sentence]," and that he was coerced by his trial counsel to sign the plea agreement "even though he was expressing [confusion] and concern." *Id.*

On appeal, Mr. Coates's then-counsel filed an *Anders* brief, noting that "[a]fter a thorough review of the [record], and considering the attorney-client correspondence with Mr. Coates," counsel has determined that there are no non-frivolous appellate issues. Aplt. *Anders* Br. at 1; *see* 10th Cir. R. 46.4(B)(1). In the *Anders* brief, counsel identifies two potential issues on appeal: whether the district court erred in denying Mr. Coates's motion to withdraw his guilty plea, and whether Mr. Coates was deprived of his constitutional right to the effective assistance of counsel. Aplt. *Anders* Br. at 3. Mr. Coates's counsel also filed a motion to withdraw, pursuant to *Anders*. *See Anders*, 386 U.S. at 744 ("[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.").

Mr. Coates filed a response to the *Anders* brief in which he states that he "did maintain [his] presumption of innocence through out [sic] the [district court proceedings'] entirety," and reiterates his claim that he requested that his counsel "withdraw [his] plea of guilty the . . . day [he pleaded guilty]." Resp. to *Anders* Br. at 1. The government declined to file a brief.

Subsequently, representing that he had been retained by Mr. Coates's family, a new attorney moved this court to be substituted for Mr. Coates's current counsel and for an order striking the previously filed *Anders* brief and for a new

briefing schedule.  We granted the motion to substitute, thus effectively terminating the representation of Mr. Coates's initial appellate counsel and rendering his motion to withdraw moot.  However, we denied the motion to strike the *Anders* brief and for a new briefing schedule.

We have carefully considered the substance of the *Anders* brief and also Mr. Coates's response to it.  Beyond that, we have thoroughly *and* independently reviewed the record.  *See Anders*, 386 U.S. at 744.  Following this assessment, we conclude that Mr. Coates raises no non-frivolous issues on appeal.  Therefore, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Mr. Coates's conviction and sentence.

## II.  FACTUAL BACKGROUND

Facing a seven-count indictment charging conspiracy, possession with intent to distribute, and distribution of methamphetamine, and three counts of carrying a firearm during and in relation to a drug-trafficking crime, Mr. Coates pleaded guilty to two of the seven counts.  Specifically, Mr. Coates pleaded guilty to Count One—Conspiracy to Possess with Intent to Distribute, and to Distribute Methamphetamine—and to Count Five—Carrying a Firearm During and in Relation to a Drug Trafficking Crime.  As part of the plea agreement, the parties agreed under Federal Rule of Criminal Procedure 11(c)(1)(C) to jointly stipulate to a sentence of twenty years' imprisonment, and Mr. Coates waived his right to a direct appeal of the stipulated sentence.

Mr. Coates signed the plea agreement on the eve of trial, and it was filed on December 6, 2010, the day his trial had been scheduled to begin. On February 16, 2011, Mr. Coates filed a pro se motion—in the form of a letter to the district court—asking to withdraw his guilty plea.[2] On February 26, 2011, the government filed a brief in opposition to that pro se request. Mr. Coates's counsel filed a (second) motion to withdraw the guilty plea on March 4, 2011. On March 22, 2011, the court denied both motions. Three days later, on March 25, 2011, the district court imposed the stipulated sentence of twenty years' imprisonment. This appeal followed.

## III. DISCUSSION

On appeal, Mr. Coates contends that the district court erred in denying the motions to withdraw his guilty plea, that his sentence is substantively unreasonable, and that the proceedings before the district court were unjust for other reasons, which we discuss below.

---

[2] Although this letter is not included in the record on appeal, the district court paraphrased the six reasons Mr. Coates gave for his request to withdraw his guilty plea as follows: "(1) [Mr. Coates] did not have enough time to properly consider his actions; (2) he did not have enough information in hand to plead guilty; (3) his attorney scared him (and his wife) into accepting a plea agreement; (4) he thought that he would not actually have to serve the 20 years he agreed to serve; (5) his lawyer has failed to get him drug treatment; and (6) his mental state at the time of the change of plea was such that he was not capable of making a rational decision." R., Vol. 2, at 48 (Suppl. Order Den. Def.'s Mot. to Withdraw Guilty Plea, filed Mar. 25, 2011).

## A.    Motions to Withdraw Guilty Plea

"We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion."  *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (en banc) (quoting *United States v. Jones*, 168 F.3d 1217, 1219 (10th Cir. 1999)) (internal quotation marks omitted).  "Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse a district court's decision unless the defendant can show that the court acted unjustly or unfairly."  *United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009) (quoting *United States v. Hamilton*, 510 F.3d 1209, 1213–14 (10th Cir. 2007)) (internal quotation marks omitted).

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  To determine if the defendant has carried this burden, we consider seven factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Yazzie*, 407 F.3d at 1142 (quoting *United States v. Sandoval*, 390 F.3d 1294, 1298 (10th Cir. 2004)) (internal quotation marks omitted); *accord Hamilton*, 510 F.3d at 1214.  Mr. Coates's arguments principally relate to two of these factors—namely, *Yazzie*'s factor one (assertion of innocence) and factor six (knowing and voluntary nature of the plea).  Based on our assessment of the *Yazzie* factors, the district court did not act unjustly or unfairly in denying Mr. Coates's motion to withdraw his guilty plea.

### 1.    Assertion of Innocence

Although we do not have Mr. Coates's February 16, 2011, pro se letter to the district court, according to the court, Mr. Coates did not assert his innocence when asking to withdraw his guilty plea.  Certainly in his second motion (filed by counsel), Mr. Coates does not assert that he is actually innocent, but rather states only that he has "repeatedly asserted his innocense [sic] *to the eve of Jury Trial*."  R., Vol. 1, at 396 (Second Mot. to Withdraw Guilty Plea, filed Mar. 4, 2011).  However, Mr. Coates avers on appeal that he "maintain[ed] [his] presumption of innocence through out [sic] the [district court proceedings'] entirety," Resp. to *Anders* Br. at 1, that he "constantly expressed [his] belief of innocence" to his trial counsel, *id.* at 2, and that he "still believe[s] [he is] innocent of [the charges to which he pleaded guilty]," *id.*

A defendant may satisfy *Yazzie*'s factor one through an assertion of legal or factual innocence.  *Hamilton*, 510 F.3d at 1214–15.  Although "this factor only

requires that [a defendant] assert his innocence," *United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996) (quoting *United States v. Carr*, No. 94-CR-46, slip op. at 17–18 (D. Wyo. Nov. 22, 1994)) (internal quotation marks omitted), a defendant must offer evidence to support conclusory statements of innocence, *see United States v. Byrum*, 567 F.3d 1255, 1264–65 (10th Cir. 2009); *United States v. Kramer*, 168 F.3d 1196, 1200 (10th Cir. 1999). Even construing Mr. Coates's claim liberally and reading it as a claim of actual innocence, Mr. Coates has failed to make the requisite showing.

Mr. Coates admitted guilt at his change of plea hearing. He volunteered specific facts regarding his involvement in the crimes, including the role he played in the conspiracy. He admitted to having knowingly carried a firearm in connection with that conspiracy, specified the type of guns that he had carried, and informed the court that he had carried the guns for protection. "Even on appeal he does not disclaim his admissions of guilt [made] at the plea colloquy." *Byrum*, 567 F.3d at 1264. In fact, to date Mr. Coates has provided no evidence of

his innocence.[3]  Accordingly, any claim Mr. Coates makes on appeal based on actual innocence fails.

## 2.    Knowing and Voluntary Plea

We review de novo whether a guilty plea was knowing and voluntary. *Hamilton*, 510 F.3d at 1215.  "[A] plea is valid if it represents a voluntary and intelligent choice among the alternatives open to the defendant."  *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000).

In this action, the record demonstrates that Mr. Coates knowingly and voluntarily entered his guilty plea.  In the plea agreement, Mr. Coates confirmed that after discussing the matter with his attorney, he understood the rights he was giving up by pleading guilty, and that "he is pleading guilty because he is, in fact, guilty."  R., Vol. 2, at 30, ¶ 6 (Plea Agreement, filed Dec. 6, 2010).

The voluntariness of the guilty plea is also evident from the district court's detailed and thorough exchange with Mr. Coates during the plea colloquy.  *See United States v. Graham*, 466 F.3d 1234, 1239 (10th Cir. 2006); *Gigley*, 213 F.3d

---

[3]    At sentencing, Mr. Coates said that he "was advised that [he should] just go in and tell the government what they wanted to hear even though it wasn't how it exactly was in light of getting the - - the plea bargain which [he] was advised to do by [his] counsel."  R., Vol. 3, at 110 (Tr. of Sentencing Hr'g, held Mar. 25, 2011).  And, in his pro se notice of appeal, Mr. Coates writes that he was coerced "by [his] counsel to tell the United States what they wanted to hear even if [he] was lying."  R., Vol. 1, at 412.  But these veiled references to the possibility that, not only did Mr. Coates lie to the government (apparently in providing cooperation), but also lied to the court during his plea colloquy, are not sufficient to disclaim his admissions of guilt or to assert his innocence.

at 517; *United States v. Jones*, 168 F.3d 1217, 1220 (10th Cir. 1999); *Carr*, 80

F.3d at 417. Throughout the colloquy, Mr. Coates assured the district court that

he understood the nature of the proceeding and the charges against him.[4]

---

[4]     We are also convinced that Mr. Coates understood the sentence that he was agreeing to serve by entering into the plea agreement. At the change of plea hearing, Mr. Coates was told repeatedly that, by entering the plea agreement, he was agreeing to receive and would receive a twenty-year sentence. First, the government explained in detail the provisions of the plea agreement, including Mr. Coates's agreement to serve twenty years' imprisonment. In pertinent part, the government said, "The defendant . . . understands that he will serve a 240-month sentence, and no sentence reduction can be granted by the Court unless the United States, at a later date, files a motion for sentence reduction pursuant to 5K1 or Rule 35." R., Vol. 3, at 66. The government also explained that though a further sentence reduction *may* be possible in the future, the plea agreement accounted for Mr. Coates's assistance prior to the plea. *Id.* at 67 ("[T]his leaves open the possibility that if at any time in the future the government asks the defendant to testify in a criminal trial, there may be a recommendation for a sentence reduction, but there are no promises of that, and there's really no way of knowing if that will happen.").

After the government had explained the plea agreement, Mr. Coates's counsel stated that Mr. Coates agreed with the government's explanation, but added that she had "made representations to Mr. Coates that he [sic] may be possible to have a 5K1.1 departure. . . . So hopefully that's going to be something that [the government and Mr. Coates] could explore in the future." *Id.* at 69.

The district court then explained:

> If I take your plea today and find you guilty and thereafter sentence you in accordance with the terms of this plea agreement, you cannot then get second thoughts and withdraw it because you'll be stuck with this sentence of 20 years. There's simply no way around that, and I don't have any discretion to sentence you in any other way.

*Id.* at 71. The district court verified that Mr. Coates had read and signed the plea

(continued...)

During the course of the plea hearing, Mr. Coates confirmed that, *inter alia*, he (1) understood that if the judge accepted the terms of the plea agreement, he would have no choice but to suffer the consequences of the twenty-year sentence; (2) understood the charges against him; (3) had personally read the plea agreement thoroughly and had discussed its terms with his lawyer before signing it, (4) saw benefit in the plea agreement and knew he had, at the time of the colloquy, a constitutional right to renege on the plea agreement and to have a jury trial; (5) was aware of the process involved in a jury trial, and was willingly giving up the legal protections afforded therein; (6) was aware of the sentence that the judge would impose; (7) understood that he would relinquish certain rights by entering into the plea agreement; (8) was competent to enter a plea; (9) wanted to go forward with making his factual statements of guilt, despite being given the opportunity to stop if he had second thoughts or wanted to speak to his lawyer; and (10) was actually guilty of the charges against him.

---

[4](...continued)
agreement (in which Mr. Coates agreed to stipulate to the twenty-year sentence). The district court explained that the only way Mr. Coates would receive a lower sentence than twenty years would be if the government filed a motion requesting to reduce the sentence. The government then explained *again* that the agreed-upon sentence of twenty years already accounted for Mr. Coates's assistance to the government, and that the only possibility for a further reduction would be "if the government calls upon [Mr. Coates] at a later date to testify about the information he [had] provided." *Id.* at 76–77. Then the district court *again* informed Mr. Coates that it would "sentenc[e] [him] to 20 years, no questions asked actually, 20 years, that's it, on the date of sentence [sic]." *Id.* at 86. The court asked Mr. Coates if he understood, and Mr. Coates responded, "Yes, Your Honor." *Id.*

Based on the plea agreement, and the plea colloquy, we have "little doubt that [Mr. Coates's] plea was knowing and voluntary." *Graham*, 466 F.3d at 1239.

For the reasons outlined below, Mr. Coates asserts that the guilty plea was not knowing and voluntary. However, his claim fails on each ground.

First, Mr. Coates asserts that "[he had] recently started depression medication that seemed to distance [him] from reality." Resp. to *Anders* Br. at 1. As a result, he "was not thinking rationally [when he entered his guilty plea] and did not understand what was taking place." *Id.* But Mr. Coates "offered no evidence [to the district court, and offers no evidence to this court on appeal] (such as medical records or narcotic drug prescriptions or doctors' affidavits) to support his assertion." *Kramer*, 168 F.3d at 1200. Mr. Coates's conclusory statements regarding the effect of his depression medication—absent any other evidence—are insufficient to permit an inference that his plea was involuntary. *See id*; *cf. United States v. Easter*, 981 F.2d 1549, 1555 n.4 (10th Cir. 1992) ("[W]e may decline to entertain Defendant's argument due to [the] absence [of any mention of the factual basis for his contention] in the record . . . ."). In addition to there not being any evidence in the record to corroborate Mr. Coates's medication claim, in his plea colloquy, Mr. Coates stated that he was not, at the time of the colloquy, "under the care of a physician or a psychiatrist"; that there was not "anything about [his] mental . . . well-being that would make it hard for [him] to understand [the colloquy and his entry into the plea agreement]," and

- 12 -

that *he had never "been treated for mental illness."* R., Vol. 3, at 70 (emphasis added).

Second, Mr. Coates avers that he entered the plea under undue and excessive pressure from his trial counsel. "A guilty plea entered upon the advice of counsel is invalid if the plea was coerced, or if the advice of defendant's counsel was not within the range of competence demanded of attorneys in criminal cases." *Carr*, 80 F.3d at 416 (citation omitted). However, this claim amounts to an ineffective-assistance-of-counsel claim, and, on these facts, the claim must be brought on collateral review. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.").

Although we may review ineffective-assistance claims in "rare" cases where the factual record is sufficiently developed, *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1216 (10th Cir. 2008), a collateral proceeding is preferable because "[a]n opinion by the district court is a valuable aid to appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand," *United States v. Brooks*, 438 F.3d 1231, 1242

(10th Cir. 2006) (quoting *Galloway*, 56 F.3d at 1240) (internal quotation marks omitted).

In this action, Mr. Coates claims that in various ways his trial counsel caused his guilty plea to not be knowing and voluntary. It is patent that Mr. Coates's ineffective-assistance-of-counsel claims would require further development of the record. *See* Aplt. *Anders* Br. at 9 ("The claims implicating effectiveness of counsel referenced off record conversations that were not developed in the record and, therefore, not available for consideration by the district court."). For example, as the government pointed out in its memorandum in opposition to Mr. Coates's motion to withdraw his guilty plea, "the fact that his defense counsel told him that he could spend the rest of his life in prison if convicted" could be "a realistic appraisal of the . . . charges" rather than "a 'scare tactic' as [Mr. Coates] claims." R., Vol. 1, at 383.[5] Mr. Coates's ineffective-assistance-of-counsel claims "require[] precisely the type of factual determinations contemplated by *Galloway*, which are beyond the scope of the record on direct appeal." *United States v. Avelar*, 80 F.3d 430, 431 (10th Cir. 1996). Accordingly, we do not consider Mr. Coates's claim that his plea was not knowing and voluntary because of the alleged ineffective assistance of his trial

---

[5] In fact, at the sentencing hearing, Mr. Coates's counsel explained that she had made "a genuine effort to try to . . . do the best [she] could for Mr. Coates so that . . . he didn't go to trial and, if he was found guilty[,] . . . serve a minimum mandatory 67 years in prison." R., Vol. 3, at 116.

counsel.[6]

### 3. Other Factors

We need not address the remaining *Yazzie* factors, *viz.*, prejudice to the government, the timing of the motion, the inconvenience to the court, and the waste of judicial resources. "[T]hese factors speak to the potential burden on the government and the court, rather than the defendant's reason for withdrawal," and "cannot establish a fair and just reason for withdrawal." *Hamilton*, 510 F.3d at 1217. Thus, because Mr. Coates failed to establish a fair and just reason for withdrawing his guilty plea under the prior two factors, the district court did not abuse its discretion in denying his motions.

### B. Other Claims on Appeal

### 1. Unreasonable Sentence

Mr. Coates appears to argue that his sentence is substantively unreasonable because it is unreasonably long, given his offense and individual characteristics, and because it creates an unwarranted sentencing disparity between his sentence

---

[6] Further, were we to consider Mr. Coates's ineffective-assistance-of-counsel claims on the record before us, we would give deference to the district court's determination that Mr. Coates's trial "counsel . . . represented [Mr. Coates] competently throughout these proceedings." R., Vol. 1, at 400 (Order Den. Def.'s Mot. to Withdraw Guilty Plea & Mot. for New Counsel, filed Mar. 22, 2011). According to the district court, Mr. Coates's trial counsel "continued to diligently represent [Mr. Coates's] interests in this matter, even after [he] request[ed] . . . new counsel." *Id.* at 400–01. Therefore, to the extent that Mr. Coates has a valid claim that he received ineffective assistance of counsel, his claim would *require* further development of the record. *See Carr*, 80 F.3d at 417 ("[W]e accept the district court's factual findings unless clearly erroneous.").

and his codefendant's sentence. But Mr. Coates "specifically waive[d] his right to appeal the sentence he receive[d] as a result of [the] Plea Agreement." R., Vol. 2, at 33, ¶ 12. "[H]e ma[de] the knowing and intelligent choice to waive his right to appeal his sentence." *Id.* at 33–34.[7] Accordingly, Mr. Coates waived his right to appeal his sentence.[8]

Nevertheless, the government has waived its right to enforce the sentence-appeal waiver by not invoking the waiver in this Court. The government declined to submit a brief in response to the *Anders* brief, and instead submitted a letter noting its "agree[ment] with the conclusion in counsel's *Anders* brief that there are no non-frivolous claims that could fairly be raised to challenge either the Appellant's conviction or sentence." Aplee. Ltr. at 1. Because the government

---

[7] In addition, before accepting Mr. Coates's guilty plea, the district court specifically explained to Mr. Coates:

> You are also waiving your right of appeal of any sentence that's imposed pursuant to the binding terms of this plea agreement. So you have no right of direct appeal. Typically when I'm exercising my discretion as a sentencing judge, a person can appeal to the Court of Appeals and say, "Well, the judge made a mistake in calculating the sentence." But you've given up that right. There won't be - - there won't an [sic] opportunity to do that.

R., Vol. 3, at 74.

[8] Of course, to the extent that Mr. Coates's sentencing argument rests on an ineffective-assistance-of-counsel claim, the argument, although not waived, must be brought on collateral review. *See supra* III.A.2. Mr. Coates did not waive any right he may have to challenge his sentence on collateral review. *See* R., Vol. 2, at 46–47, ¶ 12.

did not file a motion invoking the waiver under Tenth Circuit Rule 27.2(A)(1)(d), did not file a brief invoking the waiver, and did not explicitly cite the appeal waiver in its letter to the Court, the waiver has not been invoked, and the government has forfeited its right to enforce it. *See United States v. Calderon*, 428 F.3d 928, 930–31 (10th Cir. 2005) (refusing to enforce an appeal waiver because "it surpasses any legitimate understanding of the ethical obligations of counsel to the court to say that defense counsel's candid assessment of legal issues [in an *Anders* brief] could satisfy the government's obligations," and the government did not "mention or rely on [the] appeal waiver" when advising the court that it did not intend to submit a brief); *see also United States v. Vasquez-Reyes*, 353 F. App'x 129, 131 (10th Cir. 2009) ("Inexplicably, the government has not invoked the appellate waiver . . . .  Its letter to the court simply states, 'Government counsel has reviewed appellant's opening brief and the record in this case and discerns no meritorious basis for appeal.'" (quoting Notice of Intent Not to File Answer Br.)); *United States v. Molina-Pereyra*, 296 F. App'x 641, 643 n.1 (10th Cir. 2008) ("In notifying this court of its intent not to file an answer brief, . . . the government never mentioned the appeal waiver.  Therefore, we find that the government has forfeited its opportunity to enforce the waiver."); *cf. United States v. Contreras-Ramos*, 457 F.3d 1144, 1145 (10th Cir. 2006) ("[W]e hold that where the government explicitly cites an appeal waiver in a letter to the Court in response to an *Anders* brief, the waiver is not waived . . . .").

Ignoring the appellate waiver, we are still left with Mr. Coates's agreement stipulating to a twenty-year sentence. In light of this plea agreement, we hold that Mr. Coates's sentencing challenges necessarily must fail because any error by the district court in setting the length of the sentence at twenty years was invited. *See United States v. Mancera-Perez*, 505 F.3d 1054, 1055 (10th Cir. 2007) ("[H]e has invited any error regarding the length of his sentence . . . and his claims [raised] now for the first time on appeal are waived."); *see also United States v. Grillo*, 431 F. App'x 677, 680 (10th Cir. 2011) ("[The appellant] received a sentence within the range she requested, so she has waived her argument that her sentence was substantively unreasonable."); *United States v. Perez-Cruz*, 404 F. App'x 255, 257 (10th Cir. 2010) (holding that because, at sentencing, the appellant had *asked* the district court to impose the same sentence he now claims is substantively unreasonable, "the argument [he] seeks to make was waived"), *cert denied*, 131 S. Ct. 1831 (2011); *United States v. Ramos-Lopez*, 390 F. App'x 833, 836 (10th Cir. 2010) (holding that by requesting a sentence at the low end of the Guidelines, "[i]t is clear . . . that [the appellant] waived any argument that he was entitled to a below-guideline sentence"); *United States v. Tafolla-Zavala*, 362 F. App'x 895, 897 (10th Cir. 2010) ("Any error as to the procedural or substantive reasonableness of the sentence was waived when counsel indicated agreement with the sentence to be imposed.").

To be sure, at sentencing—contrary to the terms of his plea agreement—Mr. Coates argued, both directly and through his counsel, that the agreed-upon sentence was unreasonable.  However, the plea agreement was still in full force and effect.  *See United States v. Novosel*, 481 F.3d 1288, 1293 n.3 (10th Cir. 2007) ("Once a defendant's guilty plea is entered and accepted by the court, however, the defendant is bound by the plea agreement, subject to the provisions of Rule 11(d)(2) [regarding withdrawal].").  And the district court was obliged to follow it.  *See* R., Vol. 3, at 120–21 ("The decision as to the sentence to be imposed upon you, sir, was made when you accepted the terms of the plea agreement and I found you guilty pursuant to it. . . .  Because I've accepted the plea, I'm bound by its terms as are you.").  Any error as to the length the sentence that the court imposed on Mr. Coates stemmed from that plea agreement.  Mr. Coates's dissatisfied utterances could not, without more, alter the sentencing landscape.  *Cf. United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003) ("[T]he government may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement."); *cf. also United States v. Cudjoe*, 534 F.3d 1349, 1355 (10th Cir. 2008) ("[T]he district court never determined Cudjoe breached the plea agreement.  Thus, even if Cudjoe breached the plea agreement, until the district court so ruled, the government was not released from its promise."); *United States*

*v. Cox*, 985 F.2d 427, 430 (8th Cir. 1993) ("Neither Cox nor the government may unilaterally declare the plea agreement void; only the court has that authority."). Accordingly, we reject Mr. Coates's substantive-reasonableness sentencing challenge on the basis of the invited-error doctrine.

### 2. Accomplice Testimony

According to Mr. Coates, "[a]ll evidence against [him] was circumstantial and [the prosecution's] main witness . . . was an ex-convict [and his co-defendant] that had done time for conspiracy before [and] who was quick to point the finger." Resp. to *Anders* Br. at 2. But Mr. Coates fails to explain how these facts, even if true, would entitle him to withdraw his guilty plea or to other relief from this court. Nor can we readily discern how, absent something more, reversible error could be predicated on these facts. *Cf. United States v. Ivy*, 83 F.3d 1266, 1284 (10th Cir. 1996) ("We will not reverse a conviction merely because the verdict was grounded on the uncorroborated testimony of a coconspirator.").

### 3. *Brady* Violation

Mr. Coates also claims a potential *Brady* violation, because "evidence from the vehicle searches was never disclosed: Identification in one of the vehicles as-well [sic] as dna evidence in syringes." Resp. to *Anders* Br. at 2. "To establish a *Brady* violation, the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was

- 20 -

material." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009). Mr.

Coates makes no attempt to explain how the allegedly withheld evidence was

favorable to the defense,[9] or why it was material. Therefore, even assuming that

the prosecution suppressed the evidence identified by Mr. Coates, Mr. Coates has

failed to establish a cognizable *Brady* violation.

### 4. Judicial Bias

Mr. Coates "believe[s] the prosecution and the [district] court were

prejudice [sic] towards [him] by association of [his] family." Resp. to *Anders* Br.

---

[9] To the extent that Mr. Coates sees this evidence as being favorable for impeachment purposes, his entry of a guilty plea—at the very least—casts significant doubt on the legal viability of his *Brady* claim. *See United States v. Ruiz*, 536 U.S. 622, 633 (2002) ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."); *United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010) ("*Ruiz* teaches that *Brady* does not protect against the possible prejudice that may ensue from the loss of an opportunity to plea-bargain with complete knowledge of all relevant facts. This makes good sense: when a defendant chooses to admit his guilt, *Brady* concerns subside."); *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) ("[W]e conclude that Conroy's guilty plea precludes her from claiming that the government's failure to disclose the FBI report was a *Brady* violation."). *Compare United States v. Johnson*, 369 F. App'x 905, 906 (10th Cir. 2010) (rejecting defendant's argument that "his plea was not knowing and voluntary because he did not know that he was giving up a claim that the government failed to disclose impeachment evidence" on the ground that *Ruiz* "foreclosed this exact argument"), *with United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (distinguishing *Ruiz* on the basis, *inter alia*, that the "plea agreement was executed the day jury selection was to begin, and not before indictment in conjunction with a 'fast-track' plea"). Because Mr. Coates does not offer *any* explanation for how this allegedly suppressed evidence would have been favorable to his defense, much less an argument that it would have been favorable for impeachment purposes, we need not definitively opine on the impact of *Ruiz* on his *Brady* claim. As noted *infra* in text, his *Brady* claim is untenable in any event.

at 2.  But apart from this bald assertion, Mr. Coates provides no argument, much less any evidence, that would support his claim of bias.  Because we find no evidence in the record that suggests any judicial or prosecutorial bias against Mr. Coates, this claim fails.

### 5.      Counsel's Conflict of Interest

According to Mr. Coates, his counsel

> had previously been involved in litigation against both of [Mr. Coates's] parents[:] [Mr. Coates's] mother in a custody battle where [counsel] had deemed [his] mother a drug addict and [Mr. Coates's] father in . . . a girlfriend['s] coustody [sic] battle where [counsel] deemed him a drug dealer.  Also during the litigations between [Mr. Coates's] mother and her former husband[, counsel] had acted as guardian ad-lightum [sic] to [Mr. Coates's] younger brother and sister.

Resp. to *Anders* Br. at 1–2.

Mr. Coates "[believes] that these issues were not only . . . good cause and relevent [sic] to ask for dismissal of Counsel but drastically affected her proffessional [sic] duty by her assumption of [Mr. Coates's] guilt by her prior contact [with his] family members." *Id.* at 2.  Again, this is exactly the type of ineffective-assistance-of-counsel claim that would require a fully developed record.  As discussed above, such ineffective-assistance-of-counsel claims must be brought, if at all, on collateral review.[10]

---

[10]      Further, when an earlier conflict of interest came to the district court's attention—stemming from Mr. Coates's counsel having briefly represented Mr. Coates's co-defendant in an unrelated matter ten years

(continued...)

- 22 -

## IV.  CONCLUSION

After conducting a thorough, independent examination of the record, we are confident that there are no non-frivolous issues to present on appeal. Consequently, we **AFFIRM** the district court's judgment and sentence.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[10](...continued)
earlier—the district court held a hearing during which Mr. Coates waived the conflict and indicated that he wanted his counsel to continue as his lawyer.  In the district court's order denying Mr. Coates's request to withdraw his guilty plea and for new counsel, the court stated that it was "[n]otabl[e]" that when Mr. Coates was "given an opportunity to request new counsel when a possible conflict of interest came to the attention of the parties and the court just prior to trial, [Mr. Coates] . . . indicated he was satisfied with his attorney and wanted to keep her as trial counsel."  R., Vol. 1, at 400.